Ronald PRATE et al., Plaintiffs,

v.

Elisha FREEDMAN, City Manager of the City of Rochester, New York, et al., Defendants.

Ronald S. ZAVAGLIA et al., Plaintiffs,

v.

Elisha FREEDMAN, City Manager of the City of Rochester, New York, et al., Defendants,

and

John HOWARD et al., Defendants-Intervenors.

Nos. Civ. 76–418, Civ. 76–433.

United States District Court, W. D. New York.

May 3, 1977.

Antell, Harris & Calleri, Rochester, N.Y. (Angelo T. Calleri, Rochester, N.Y., of counsel), for plaintiffs.

Louis N. Kash, Corp. Counsel, of the City of Rochester, Rochester, N.Y. (Emil J. Kar-

cich, Rochester, N.Y., of counsel), for defendants Freedman & Hastings.

Joseph C. Pilato, Deputy County Atty., Monroe County, Rochester, N.Y., for defendants County of Monroe Civil Service Commission and Executive Director of the County of Monroe Civil Service Commission.

Daan Braveman, Greater Up-State Law Project, Rochester, N.Y., Marianne Artusio, Monroe County Legal Assistance Corp., Rochester, N.Y., for defendants-intervenors.

CURTIN, Chief Judge.

Plaintiffs have brought these consolidated actions to seek compensatory and injunctive relief for what they claim to be discrimination in the recruiting, testing and hiring of applicants for the position of police officer in the City of Rochester, New York.

The plaintiffs are white applicants for the position of police officer who challenge these practices as preferring black, Spanish-surnamed and other non-white persons for such positions. Defendants are public officials responsible for hiring applicants for positions as police officers in the Rochester Police Department. Defendant-Intervenors are the named plaintiffs in the lawsuit entitled *John E. Howard, et al. v. Elisha Freedman, et al.,* Civil Docket No. 74–234 (W.D. N.Y.). The consent decree approved by Judge Harold P. Burke in the latter action approved practices which are the subject of this action.

A brief review of the history of the *Howard* litigation and earlier developments in this suit will place the present motion in perspective. In 1974 John Howard and other plaintiffs commenced an action under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.* against the very defendants in this case. On the day trial was to begin, the parties agreed to terms for settlement. After a hearing Judge Burke entered an order incorporating the

terms of the settlement agreement. The order provides for validation of written examinations, a minority recruitment program, a goal of 25% minority employment, and a temporary appointment mechanism to reach the hiring goal. Over a year later, a group of non-minority applicants, including 14 of the 16 plaintiffs in this suit, moved to intervene and reopen the *Howard* case on grounds of reverse discrimination against non-minority individuals. I found that motion to be untimely since the plaintiffs had notice of the terms of the consent decree but failed to act at that time. To reopen that case would have caused undue delay and hardship to the original parties. *Howard v. Freedman,* Civ–74–234 (W.D. N.Y. June 22, 1976). Subsequently the applicants for intervention stipulated to a dismissal of their appeal to the Second Circuit on October 22, 1976.

Plaintiffs filed the complaint in this action with the court on September 17, 1976. A motion for a preliminary injunction against the appointment of successful police applicants to the Police Academy was denied on October 20, 1976. The action is currently before the court on defendants' motion to dismiss under Fed.R.Civ.P. 12(b) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

## FEDERAL LAW CLAIMS

■ Defendants challenge the court's jurisdiction in this action since it constitutes a collateral attack on the final court order in *John E. Howard, et al. v. Elisha Freedman, et al.,* Civil Docket No. 74–234 (W.D. N.Y.1975). They cite *Oburn v. Shapp,* 393 F.Supp. 561, 576 (E.D.Pa.1975), *aff'd on other grounds,* 521 F.2d 142 (3d Cir. 1975), to establish that in a similar case, a white police applicant's challenge to affirmative hiring relief granted by court order to minority applicants was impermissible.[1] Furthermore, in *Construction Industry Combined Committee v. International Unions of*

---

1. Since that ruling Judge Green has, in a separate decision, dismissed the complaint in *Oburn.* He found the claim of reverse discrimination to be an improper collateral attack over which he could not assert subject matter jurisdiction. *See Oburn v. Shapp,* 70 F.R.D. 549 (E.D.Pa.1976), *aff'd* 546 F.2d 418 (3d Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977).

*Operating Engineers,* 67 F.R.D. 664 (E.D. Mo.1975), the court would not permit litigation of the merits of a Title VII consent decree in a separate action. There the court noted that the proper avenue for relief would have been a timely intervention in the original case.

I must follow the line of legal precedent cited in *Oburn* and *Construction Industry.* This suit constitutes an impermissible collateral attack on Judge Burke's ruling in *Howard.* The plaintiffs in this case should properly have sought timely intervention in the *Howard* case, but failed to do so as ruled in my June 22, 1976 decision. To permit further challenge of the *Howard* consent decree would clearly violate the policy under Title VII to promote settlement, *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968). This would also result in continued uncertainty for all parties involved and render the concept of final judgments meaningless. *Cf. Class v. Norton*, 505 F.2d 123, 125 (2d Cir. 1974).

■ Even if this court could assert jurisdiction over the subject matter, the complaint still fails to state a claim upon which relief may be granted.

Time and again in the employment discrimination context, the courts have held that the Constitution does not bar remedial orders granting a limited preference to members of groups that have previously been discriminated against. *See Rios v. Enterprise Association Steamfitters Local 638*, 501 F.2d 622, 628–630 (2d Cir. 1974); *see also E.E.O.C. v. AT&T Co.*, 419 F.Supp. 1022, 1044–45 (E.D.Pa.1976). The cases cited by plaintiffs are distinguishable from this case since they do not involve entry level goals. *See, e. g., Chance v. Board of Examiners*, 534 F.2d 993 (2d Cir. 1976); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Therefore, no legal challenge may be mounted by this action against the limited use of preferences approved in the *Howard* decree.

Defendants also argue that dismissal is warranted because the plaintiffs have failed to comply with the jurisdictional prerequisite of filing a complaint with the Equal Employment Opportunity Commission and exhausting their administrative remedies. Since I believe that the suit may be dismissed as an improper collateral attack, I do not find it necessary to rule on this ground.

## STATE LAW CLAIMS

In their complaints plaintiffs also assert that defendants' conduct violates the New York State Constitution. Defendants argue that this court should not take pendent jurisdiction over the state claim or, in the alternative, that these allegations should be dismissed for failure to state a claim upon which relief may be granted.

■ Since the court cannot assert subject matter jurisdiction over the plaintiffs' federal law action, it must also forego jurisdiction of the pendent state law claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1965).

■ Furthermore, the practices which the plaintiffs challenge were properly established by Judge Burke in the *Howard* consent decree. Since that remedy was imposed pursuant to Title VII, it suspends the application of conflicting state law. U.S. Const. art. VI, cl. 2; *see also Louisiana v. United States*, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); *Carter v. Gallagher*, 452 F.2d 315, 328 (8th Cir. 1971), *cert. denied*, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972). Therefore, the plaintiffs' complaint must also be dismissed as to claims grounded in state law since they fail to state a claim upon which relief may be granted.

The Clerk is directed to enter judgment dismissing plaintiffs' complaint.

## ATTORNEY FEES

Defendants-Intervenors have moved to recover reasonable attorney fees and costs

incurred in this suit. Under 42 U.S.C. § 2000e–5(k), the court has discretion to award a reasonable attorney fee to the prevailing party in a Title VII action. The Second Circuit has ruled that a prevailing defendant should be permitted such fees only where the action brought is found to be "unreasonable, meritless or vexatious." *Carrion v. Yeshiva University*, 535 F.2d 722 (2d Cir. 1976).

■ In this action the plaintiffs have brought claims which are virtually identical to those asserted in their prior unsuccessful motion to intervene in the *Howard* litigation. Furthermore, this attack on the *Howard* order has been brought despite the body of case law in this and other circuits which rejects such claims. Based upon these considerations, this suit may be considered unreasonable and vexatious. Defendants-Intervenors are therefore directed to submit an affidavit to the court detailing their attorney fees in this action. Plaintiffs may also file an affidavit in opposition to the motion for attorney fees. These affidavits shall be filed not later than May 23, 1977. A hearing on defendants' application shall be held on June 17, 1977 at 9:00 a. m.

So ordered.