Glenn N. HEFNER, etc.,
Plaintiff-Appellant,

v.

NEW ORLEANS PUBLIC SERVICE, INC., et al., Defendants-Appellees.

No. 77–1671.

United States Court of Appeals,
Fifth Circuit.

Nov. 1, 1979.

Dale C. Wilks, Louis B. Merhige, New Orleans, La., for plaintiff-appellant.

Michael J. Molony, Jr., New Orleans, La., for defendants-appellees.

Donald J. Bernard, Sidney H. Cates, IV, New Orleans, La., for Amalgamated Transit Union.

James P. Scanlan, Atty., EEOC, Washington, D. C., amicus curiae, for defendants-appellees.

Before GOLDBERG, FAY and VANCE, Circuit Judges.

GOLDBERG, Circuit Judge:

This case involves a challenge under Title VII of the Civil Rights Act of 1964, U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 to a consent decree resulting from an earlier class action suit and a collective bargaining agreement incorporating its provisions. Together, these agreements implemented an affirmative action program for black transit operators. We do not reach the merits of either of plaintiff's claims since both were filed much too late to be considered, and affirm the trial court's dismissal of the complaint.

## I

### Factual Background

Plaintiff Glenn N. Hefner, a white bus driver for New Orleans Public Service, Inc. ("NOPSI"), brought this action on June 25, 1976, against NOPSI, the Co-operative Street Railway Employees Association, and the Amalgamated Transit Union ("ATU")[1] claiming unlawful "reverse" racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and of 42 U.S.C. § 1981. Hefner purports to represent a class of similarly-situated employees of NOPSI, although the case has never been certified as a class action.

Hefner's complaint challenges certain provisions of a bargaining agreement between NOPSI and ATU signed in December, 1974. The bargaining agreement incorporated the consent order entered in *Fag-*

*gen v. New Orleans Public Service, Inc.*, No. 70–2946 (E.D.La. March 8, 1974). The propriety of the consent order is also challenged on constitutional and statutory ground. The challenged provisions provide that "pick" lists used for choice of bus routes and vacation time are to be established by alternating white and black drivers hired prior to November 29, 1971, in order of their relative seniority among all such white drivers and black drivers, respectively. Thus, whites occupy the odd-numbered positions on the "pick" lists, and blacks occupy the even-numbered positions.

On March 7, 1974, the day before the consent decree was entered, Hefner filed a charge with the Equal Employment Opportunity Commission alleging discrimination. The EEOC did not investigate the charge because it believed that the district court's entry of the consent order divested it of jurisdiction over the charge. On May 22, 1974, the EEOC informed Hefner of this conclusion and recommended that he request a hearing on the consent order in the District Court or appeal it to the United States Court of Appeals of the Fifth Circuit.

On March 30, 1976, the EEOC sent Hefner a letter notifying him that he had the right to sue in federal court within ninety days. Hefner then filed his complaint in this action on June 25, 1976.

The Defendants moved that the complaint be dismissed for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. The district court granted defendants' motion and dismissed the complaint. It held that the remedial provisions of the consent order were lawful under Title VII and that § 1981 conferred no right of action upon white persons.

## II

### Timeliness of Title VII Claim

■ The statutory provision at issue here is 42 U.S.C.A. § 2000e–5(f)(1) (West 1974), which states in relevant part:

---

[1]. Amalgamated Transit Union is the successor as bargaining representative for NOPSI's tran-

sit employees of the Co-operative Street Railway Employees Association.

. . . [i]f a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . ., shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.

In administering this section, for some time the EEOC used a two-step procedure by which it would first send a letter informing the complainant either that his charge had been dismissed, his file administratively closed, or that conciliation efforts had failed, and that a second letter (often referred to as a "right-to-sue" letter) would be issued upon the request of the complainant or his attorney.[2] Some of these letters explicitly informed the recipient that he would have ninety days from his receipt of the right to sue letter to file suit in federal court.[3] In *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977), we held this "two-tier" procedure to be invalid, but applied our ruling prospectively only so that parties misled by the EEOC's procedure would not lose their right to have their claim heard in federal court.[4]

In this case, we are faced with a somewhat mysterious variant on the "two-tier" procedure. The first letter sent by the EEOC to Hefner[5] did not inform him that he could request a right to sue letter; nor

did it inform him that any further EEOC action on his claim was contemplated. It stated explicitly that Hefner's file had been administratively closed because, it said, the EEOC was "powerless to investigate a company which acts in accordance with a Court Order." It also stated that the EEOC had concluded that it lacked jurisdiction to investigate the matter, and that Hefner's appropriate remedy was to request a hearing on the Order in District Court or to appeal the Order to the United States Court of Appeals for the Fifth Circuit.

Whether or not the letter was correct in stating that the EEOC was powerless to investigate the charge, an issue we need not decide, it clearly informed Hefner that he could expect no further action from the EEOC, *i. e.*, that, as far as the EEOC was concerned, his charge was dismissed. This situation is thus entirely different from those in which the first letter communicates that efforts at conciliation have failed and indicates that further action by the EEOC is contemplated, *see, e. g., Turner v. Texas Instruments, Inc.*, 556 F.2d 1349 (5th Cir. 1977), or in which the first letter states only that efforts at conciliation have failed and that complainant has the right to file suit in federal court, *see Page v. United States Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978). In the latter situation, this Court found that the first letter did not unambiguously inform the complainant that the EEOC had decided not to sue. *See id.*, 556 F.2d at 351; *Zambuto, supra*, 544 F.2d at 1335. Here, as in *Key v. Lumberjack Meats, Inc.*, 434 F.Supp. 289 (N.D.Ala.1977), the plaintiff could not have reasonably been misled by the first letter into believing that the EEOC contemplated further action:

---

**2.** *See, e. g., Bernard v. Gulf Oil Co.*, 596 F.2d 1249 (5th Cir. 1979); *Lynn v. Western Gillette Co.*, 564 F.2d 1282 (9th Cir. 1977); *Turner v. Texas Instruments, Inc.*, 556 F.2d 1349 (5th Cir. 1977); *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977); *Pacheco v. Phelps Dodge Refining Corp.*, 531 F.2d 709 (5th Cir. 1976); *DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975) (on rehearing).

**3.** *See, e. g., Turner, supra ; Lacy v. Chrysler Corp.*, 533 F.2d 353 (8th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976).

**4.** *Accord DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975) (on rehearing). The EEOC apparently had terminated use of the two-tier procedure some time prior to our decision in *Zambuto*. *See Zambuto, supra*, 544 F.2d at 1335 n.6.

**5.** This letter is dated May 22, 1974.

"there could be no doubt in the plaintiff's mind that he would receive no further help from the EEOC." *Id.* at 292.

We have previously held that the notice sent by the EEOC need not inform the complainant of his right to sue, and that it "need only inform the complainant that the administrative process is terminated." *Page v. United States Industries, Inc.*, 556 F.2d 346, 351 n.2 (5th Cir. 1977); *see Zambuto, supra*, 544 F.2d at 1335; *Key v. Lumberjack Meats, Inc.*, 434 F.Supp. 289 (N.D. Ala.1977); *cf. Eastland v. Tennessee Valley Authority*, 553 F.2d 364, 369 (5th Cir.) *cert. denied*, 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977) (notice requirement of 42 U.S.C. § 2000e–16).[6] The letter of May 22, 1974, sent to Hefner by the EEOC clearly met this test.

Approximately twenty-two months after it sent the first letter, for no apparent reason,[7] the EEOC sent Hefner a form letter entitled "Notice of Right to Sue," which informed him that if he wished to file suit in federal court, he would have to do so within ninety days of receipt of the letter.[8]

If this second letter had been received within ninety days of the first letter, Hefner might persuasively claim that he had failed to file suit within ninety days of the first letter because he was misled by the EEOC into believing that he had ninety days from receipt of the second letter in which to file suit. When incorrect statements of the law in letters from the EEOC have caused potential plaintiffs to fail to file suit within the statutory period, both we and other courts of appeals have been sympathetic to the argument that reliance on misinformation from the agency charged with protecting employee rights should not preclude the employee from enforcing those rights. *See, e. g., Zambuto, supra* ; *DeMatteis, supra*.[9] But see *Lacy v. Chrysler*

6. The Ninth Circuit has taken the contrary view, *see Lynn v. Western Gillette, Inc.*, 564 F.2d 1282, 1286 (9th Cir. 1977), but it relied on the EEOC's regulations which then required the EEOC to send a specific form of notice, including notice of the right to sue, when conciliation efforts had failed. *See* 29 C.F.R. § 1601.25 (1972). This case can be distinguished, because the regulations have never made any provision for dismissals for lack of jurisdiction and therefore do not mandate additional notice in this situation. We also note that the Eighth Circuit has held that the running of the ninety-day period is triggered by a notice explicitly advising plaintiff that the EEOC has decided not to file suit, even though the notice also incorrectly informs the complainant that he must request a right to sue letter before he can file suit, and will then have ninety days in which to sue. *See Lacy v. Chrysler Corp.*, 533 F.2d 353, 360 (8th Cir.) *cert. denied*, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976). Whatever the relative merits of the various rules, we are bound by the decisions of this Circuit.

7. The letter, in a box provided for indicating the reasons for dismissal of the charge, states "you requested issuance of this Notice of Right to Sue." There is no evidence in the record indicating when Hefner made such a request, or even that he ever made it.

8. The full text of this letter, dated March 30, 1976, is as follows:

If you want to pursue your charge further, you have the right to sue the respondent(s) named in this case in the United States District Court for the area where you live. If you decide to sue, you must do so within ninety (90) days from the receipt of this Notice; otherwise your right is lost.

If you do not have a lawyer or are unable to obtain the services of a lawyer, take this Notice to the United States District Court which may in its discretion, appoint a lawyer to represent you.

An information copy of this Notice has been sent to the respondent(s) named in this case. If you have any questions about your legal rights or need help in filing your case in court, call the EEOC representative named above.

9. This is true despite the fact that the ninety-day period for filing in federal court has been called "jurisdictional" in cases such as *Lacy v. Chrysler Corp.*, 533 F.2d 353, 361 (8th Cir. 1976) (Dissenting opinion); *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, 309 (2d Cir. 1975), *modified*, 520 F.2d 409; *Genovese v. Shell Oil Co.*, 488 F.2d 85 (5th Cir. 1973). *See Pacheco v. Phelps Dodge Refining Corp.*, 531 F.2d 709, 711 (5th Cir. 1976); *cf. Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (time limit in 42 U.S.C. § 2000e–16).

In *Chappell v. Emco Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979), we dealt with the question of whether the 180–day period for filing a complaint with the EEOC should be treated as a jurisdictional requirement or a statute of limitations and noted that in certain

Corp., 533 F.2d 353, 360 (8th Cir.), *cert. denied*, 429 U.S. 959, 97 S.Ct. 381, 50 L.Ed.2d 325 (1976). Here, however, the second letter was not received by Hefner until long after the ninety-day filing period had expired. He thus cannot claim that he was misled by either the first or the second letter into missing the filing deadline.[10]

### III

### *Timeliness of § 1981 Claim*

■ The trial court rejected Hefner's claim under 42 U.S.C. § 1981, relying on our decision in *McDonald v. Santa Fe Trail Transportation Co.*, 513 F.2d 90 (5th Cir. 1975), *reversed*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), which held that § 1981 confers no actionable rights upon white persons. The Supreme Court has since reversed our holding in that case, *McDonald v. Santa Fe Trail Transportation*

Co., 96 S.Ct. 2574 (1976). We are therefore compelled to hold that the district court's dismissal on this ground was in error.[11]

However, we affirm the trial court's dismissal of Hefner's § 1981 claim because it, like the Title VII claim, was time-barred at the time he filed his complaint. Hefner was aware of the terms of the consent decree not later than March 7, 1974, the day before the consent decree was approved by the district court. On March 7, 1974, he filed a complaint with the EEOC, challenging the terms of the consent decree. By letter dated May 22, 1974, he was informed that the EEOC would not assist him in obtaining modification of the decree. Yet Hefner did not file his complaint until June 25, 1976.

Two years is simply too long a delay in these circumstances, absent a compelling justification.[12] Although the complaint is

---

circumstances equitable modification of the limitation is appropriate, regardless of how it is characterized. At least three categories of cases call for such equitable modification. *See id.* Assuming *arguendo* that the ninety-day period at issue here should be treated similarly, this case falls into none of those categories. Two of the three categories relate to delay in filing the initial EEOC complaint and are not relevant here. The third category, reliance on misinformation received from the EEOC, is also not applicable on the record before us, since the ninety-day filing period had expired long before Hefner received the letter containing the misinformation. Moreover, the facts here alleged do not call for exercise of our equitable discretion to allow Hefner to pursue his Title VII claim, since Hefner simply waited twenty-two months to pursue his claim in court, far in excess of the ninety days allowed by statute.

10. At oral argument before us, Hefner's attorney raised for the first time the possibility that Hefner may have been misled into thinking he would receive a further letter from the EEOC by a telephone conversation with someone at the EEOC shortly after he had received the first letter. There is no reference to such a conversation anywhere in the record, so of course we cannot now consider what might be the effect of the receipt of misinformation from the EEOC in a telephone conversation. *See Congress & Empire Spring Co. v. Knowlton*, 103 U.S. 49, 61, 26 L.Ed. 347 (1881); *cf. Schley v. Pullman's Palace Car Co.*, 120 U.S. 575, 7 S.Ct. 730, 731, 30 L.Ed. 789 (1887) (statements in printed brief); *Bono v. United States*, 113 F.2d 724, 725 (2d Cir. 1940) (same). *But cf. DeMatteis, su-*

*pra*, 520 F.2d at 410 (on rehearing) (case remanded to district court for factual determination of contents of cover letter sent by EEOC).

11. The trial court's error was our own on this issue of law. In fact, his error was compelled by his duty to follow our since-overruled theory of § 1981. Neither we nor he can be considered blameworthy for lacking sufficient clairvoyance to predict that *Santa Fe* would blaze a new trail.

12. We of course express no opinion as to how short a delay might be acceptable. This is ordinarily a matter within the trial court's discretion, *cf. United States by Bell v. Allegheny-Ludlum Industries, Inc.*, 553 F.2d 451 (5th Cir. 1977) (per curiam), *cert. denied sub nom. United Steelworkers Justice Committee v. United States*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978) (post-judgment motion to intervene), and will depend on plaintiff's justification for the delay and the degree of prejudice to other parties. *See generally, Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977).

The same considerations which govern our disposition of the timeliness issue, as discussed below, apply whether this be treated as a motion to intervene after the judgment, see *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977), *United States by Bell v. Allegheny-Ludlum Industries, Inc.*, 553 F.2d 451 (5th Cir. 1977) (per curiam), *cert. denied sub nom. United Steelworkers Justice Committee v. United States*, 435 U.S. 914, 98 S.Ct. 1467, 55 L.Ed.2d 505 (1978), an independent action to set aside the judgment, or an independent action seeking

framed as an independent cause of action, much of the relief sought is an injunction prohibiting NOPSI and ATU from implementing or enforcing the provisions of the consent decree and the collective bargaining agreement which incorporates it.[13]

Assuming *arguendo* that an independent action to attack a consent decree is appropriate,[14] to allow plaintiff to attack the decree at this late point would severely undercut important notions of judicial efficiency and finality of judgment, and would unfairly prejudice other parties and nonparties. He is therefore barred by laches from bringing this suit. When an inexcusable delay prejudices others, laches bars the claim. *See In re Casco Chemical Co.*, 335 F.2d 645, 651 (5th Cir. 1964); *Davis v. Alabama Power Co.*, 383 F.Supp. 880 (N.D.Ala. 1974). The *Faggen* consent decree was reached after careful consideration by the parties involved; they do not wish, and should not be forced, to defend the decree in lawsuits brought long after the decree was signed. Allowing suits like this would severely undercut the strong policy in favor of reaching voluntary settlements to resolve Title VII actions, *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44, 94 S.Ct. 1011,

39 L.Ed.2d 147 (1974); *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 846 (5th Cir. 1975), *cert. denied sub nom. Harris v. Allegheny-Ludlum Industries, Inc.*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976). NOPSI and ATU would be forced to incur additional expense solely because of plaintiff's delay. Employees of NOPSI had built up expectations based on over two years of experience with the terms of the consent decree. The *Faggen* plaintiffs may no longer be represented by counsel; in any event, they would likely be put to substantial additional expense to protect the relief won in *Faggen*.

Hefner does not claim that he was unaware of the terms of the consent decree during the two-year period. He actually filed his complaint with the EEOC challenging the terms of the decree the day before it was entered.[15] Nor does he offer any explanation for his delay in filing this suit. He does not claim that the *Faggen* suit was collusive, or that fraud, accident, or mistake infected the original suit or prevented him from discovering his rights.

Therefore, we hold that Hefner's efforts to upset the consent decree were untimely,

relief clearly inconsistent with the prior judgment. *Cf. Bankers Mortgage Company v. United States*, 423 F.2d 73, 77 n.7 (5th Cir.), *cert. denied*, 399 U.S. 927, 90 S.Ct. 2242 (1970) (independent action for relief from judgment may be treated as Fed.R.Civ.P. 60(b) motion for relief from judgment).

13. The relief requested includes, *inter alia*:
"That this Court rescind those provisions of the Consent Order in C.A. No. 70–2846 (sic) with respect to the 'pick' lists and 'seniority rights', . . .
"that the vested 'seniority rights' of the Plaintiff and the class he represents be reinstated." . . .
"That this Court issue preliminary and permanent injunctions restraining and enjoining Defendants from implementing and enforcing the provisions of the labor contract between the Defendants which incorporates the terms of the Consent Order in C.A. 70–2946. . . ."

14. Several courts have held themselves to be without jurisdiction to entertain such a suit because the plaintiff should have intervened in the prior action. *See Black and White Children of the Pontiac School System v. School District of Pontiac*, 464 F.2d 1030 (6th Cir. 1972); *Prate v. Freedman*, 430 F.Supp. 1373 (W.D.N.Y.),

*aff'd*, 573 F.2d 1294 (2d Cir. 1977), *cert. denied*, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978); *McAleer v. American Telephone & Telegraph Co.*, 416 F.Supp. 435 (D.D.C.1976); *OBurn v. Shapp*, 70 F.R.D. 549 (E.D.Pa.1976), *aff'd* 546 F.2d 418 (3d Cir. 1976), *cert. denied*, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); *Construction Industry Combined Committee v. International Union of Operating Engineers*, 67 F.R.D. 664 (E.D.Mo.1975). Because of our holding that plaintiff is barred by laches from bringing this claim, we need not decide whether we would follow these cases.

15. We leave open whether the filing of an EEOC complaint justifies a plaintiff in delaying his challenge to the decree until the EEOC has acted on his complaint. Here, Hefner's delay until the EEOC had responded to his complaint accounts for only about two and one-half months of the two-year delay. We also note that the letter sent to Hefner by the EEOC on May 22, 1974 informed Hefner that the appropriate remedy was to request a hearing on the consent order in district court or appeal the order to this court. Thus Hefner cannot claim that he had no knowledge of these possibilities.

and affirm on this basis the district court's dismissal of the § 1981 claim.

AFFIRMED.