687 F.2d 66
 32 Fair Empl.Prac.Cas. 228,
30 Empl. Prac. Dec. P 33,070
R. D. THAGGARD, et al., Plaintiffs-Appellants,
v.
The CITY OF JACKSON, Mississippi, a municipal corporation,
et al., Defendants- Appellees.
Ronald N. ASHLEY, Plaintiff-Appellant,
v.
CITY OF JACKSON, et al., Defendants-Appellees.
R. D. THAGGARD, et al., Plaintiffs-Appellants,
v.
CITY OF JACKSON, et al., Defendants-Appellees.
 Nos. 78-2980, 78-3642.
 United States Court of Appeals,
Fifth Circuit.
 Rehearing and Rehearing En Banc Denied Nov. 19, 1982.
Sept. 27, 1982.
 
 Dixon L. Pyles, Ronald N. Ashley, Jackson, Miss., for plaintiffs-appellants.
 Howard C. Ross, Jr., City Atty., Jackson, Miss., David L. Rose, S. Theodore Merritt, U. S. Dept. of Justice, Employment Sec., Civ. Rights Div., Washington, D. C., Mildred M. Matesich, Jessica Dunsay Silver, Peter C. Canfield, Civ. Rights Div., Dept. of Justice, Washington, D. C., George Phillips, U. S. Atty., Jackson, Miss., for defendants-appellees.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before GEE and JOHNSON, Circuit Judges, and VAN PELT*, District Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This consolidated action involves two reverse discrimination cases. Plaintiffs in both cases contend that defendants maintain a discriminatory pattern, practice, and policy toward hiring and promotion. Defendants answer that the challenged practices are mandated by three consent decrees entered on March 25, 1975 in the cases of United States v. City of Jackson, Corley v. City of Jackson Police Department, and Bell v. City of Jackson. The consent decree entered in United States v. City of Jackson required, among other things, that the City of Jackson, Mississippi adopt and seek to achieve a goal of hiring blacks for one-half of all vacancies in all job classifications, subject to the availability of qualified applicants, until such time as the proportion of blacks to whites in each such classification equalled the proportion of blacks to whites in the working age population of the City of Jackson. The consent decree entered in Corley v. Jackson Police Department further provided, among other things, that the City of Jackson Police Department establish separate promotion eligibility lists for white and black employees and that it make future promotions, subject to the availability of qualified black candidates, alternately from each list in a one-to-one ratio until the proportion of black persons in supervisory positions and in the ranks of patrolmen substantially equalled the proportion of blacks to whites in the working age population of the City of Jackson. In the United States v. City of Jackson consent decree, the district court expressly retained "jurisdiction of this action for such further relief or other orders as may be appropriate." Each consent decree expressly incorporated the other by reference.
 
 
 2
 Plaintiffs' various motions to intervene in the cases resulting in consent decrees were denied. Additionally, the district court denied motions for temporary restraining orders and temporary injunctions, which were filed in hopes of preventing defendants from continuing certain practices.
 
 
 3
 The district court, however, granted the United States' motion to intervene in the consolidated cases. The district court also held that the independent reverse discrimination actions constituted an impermissible collateral attack upon the earlier consent decrees and, therefore, dismissed plaintiffs' complaints. This appeal followed. This Court affirms the judgment of the district court.
 
 
 4
 In this appeal, this Court is not faced with determining whether plaintiffs are entitled to intervene in the principal suits that resulted in the consent decrees. The question before this Court is whether plaintiffs' causes of action are impermissible collateral attacks upon those consent decrees. "It is settled that a consent decree is not subject to collateral attack." Dennison v. City of Los Angeles, 658 F.2d 694, 695 (9th Cir. 1981).
 
 
 5
 Plaintiffs argue they are not collaterally attacking the consent decrees. The foundation of their position is that, for various reasons, the challenged activities of defendants are not required by the decrees. Since the practices are not required, plaintiffs argue, their complaints cannot be said to constitute a collateral attack upon the decrees, but only upon the allegedly discriminatory activity. Plaintiffs argue basically that the particular activity complained of could not be required by the consent decrees because (1) it is expressly prohibited by the decrees, (2) it conflicts with the plain meaning of the terms of the decrees, or (3) it violates state and federal law.
 
 
 6
 In form, plaintiffs' arguments appear to implicate something other than the consent decrees themselves. Examination of the substance of plaintiffs' position reveals, however, that the consent decrees are indeed implicated, and plaintiffs' complaints constitute collateral attacks upon the decrees. At the outset, plaintiffs, by stating that the challenged activity is expressly prohibited by the decrees, are arguing that defendants are not complying with the consent decrees. Accordingly, determination of the validity of plaintiffs' position necessitates a decision regarding what constitutes compliance with the decrees.[1] Additionally, plaintiffs' position necessitates a decision regarding precisely what activity is mandated by the decrees' requirement that defendants "seek to achieve" certain goals.
 
 
 7
 The district court entering the consent decrees expressly retained jurisdiction "for such further relief or other orders as may be appropriate." Implementation of and continued compliance with the consent decrees is under the supervision of the district court that entered the decrees. It is not up to this Court, or the district court in the instant case, to decide-in a collateral proceeding-whether the challenged hiring or promotion practices are either allowed or mandated by the consent decrees. Accordingly, the district court in the instant case did not err in refusing to accept plaintiffs' invitation to speculate regarding what constitutes compliance with or is required by the consent decrees. Such a determination would mean that the parties to the consent decrees could "be faced with either inconsistent or contradictory proceedings." O'Burn v. Shapp, 70 F.R.D. 549 (E.D.Pa.1976), affirmed without opinion, 546 F.2d 417 (3d Cir. 1976), cert. denied, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977); Jackson v. Alabama Department of Public Safety, 657 F.2d 689 (5th Cir. 1981) (holding that parties to a consent decree that later claim the other parties are not in compliance with the decree have a remedy through the enforcement of the decree in the original action and not in an independent action); Dennison v. City of Los Angeles, 658 F.2d at 694; Black and White Children of Pontiac v. City of Pontiac School District, 464 F.2d 1030 (6th Cir. 1972) ("The proper avenue for relief if there were unanticipated problems which had developed in the carrying out of the court's order, was an application to intervene and a motion for additional relief in the principal case."); Prate v. Freedman, 430 F.Supp. 1373 (W.D.N.Y.1977), affirmed without opinion, 573 F.2d 1294 (2d Cir. 1977), cert. denied, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978).
 
 
 8
 Plaintiffs further argue that "if such practices are required by the decrees, the (next) step (toward resolution of these appeals is) to determine whether such requirements, and/or the decrees, are illegal, unconstitutional, or void."[2] While plaintiffs attempt to characterize their review of state and federal laws as a mechanism for interpreting the true meaning of the decrees, its position, as stated and argued, is akin to a mortar attack on the validity of the decrees themselves.[3] To permit this collateral challenge of the decrees "would clearly violate the policy under Title VII to promote settlement." Prate v. Freedman, 430 F.Supp. at 1375 citing Oatis v. Crown Zellerbach Corp., 398 F.2d 496, 498 (5th Cir. 1968). It "would also result in continued uncertainty for all parties involved and render the concept of final judgments meaningless." Prate, 430 F.Supp. at 1375. See also Hefner v. New Orleans Public Service, Inc., 605 F.2d 893, 898 (5th Cir. 1979) ("(T)o allow plaintiff to attack the decree at this late point would severely undercut important notions of judicial efficiency and finality of judgment, and would unfairly prejudice other parties and nonparties.").[4]
 
 
 9
 This Court's determination that the district court did not err in dismissing plaintiffs' complaints makes it unnecessary to address plaintiffs' remaining claims regarding the district court's denial of a preliminary injunction and temporary restraining order. This Court's determination also pretermits the need to determine whether the district court erred in granting the Government's motion to intervene. The judgment of the district court dismissing plaintiffs' claims for lack of subject matter jurisdiction is affirmed.
 
 
 10
 AFFIRMED.
 
 
 
 *
 District Judge of the District of Nebraska, sitting by designation
 
 
 [1]
 Indeed, plaintiffs recognize the necessity of such a determination. At oral argument, plaintiff Ashley-who, as an attorney, argued his case pro se-stated, "We are attacking the city's noncompliance with the decree, or its misapplication of the decree."
 
 
 [2]
 Plaintiffs also argue that "(i)f the decrees legally allow racial preferences to blacks as a remedy for past racial discrimination by the defendants, the plaintiffs are entitled to seek compensation for their injuries and damages proximately caused by the defendant's own wrongdoing." Plaintiffs further explained this position at oral argument by stating they believe they are entitled to compensation because the City had to enter the decrees to correct past discrimination
 This position is precisely the position that was labeled an impermissible collateral attack in Dennison v. City of Los Angeles, 658 F.2d at 694, since "(a)warding compensatory relief to the nonminority employees would impose conflicting or inconsistent obligations." Id. at 695.
 
 
 [3]
 The district court in the instant case, of course, could not modify the consent decrees. As the First Circuit stated in Culbreath v. Dukakis, 630 F.2d 15 (1st Cir. 1980), "only the district court supervising implementation of the decree (would) have subject matter jurisdiction to modify the decree(s)" as they relate to the mechanisms for achieving the goals of the decrees. Id. at 22
 
 
 [4]
 See also Smith v. Missouri Pacific Railroad Company, 615 F.2d 683 (5th Cir. 1980). Smith involved a challenge upon a lawfully entered "Agreed Order" under Rule 60(b) of the Fed.R.Civ.Pro. The district court in Smith denied the Rule 60(b) motion to amend the agreed order, and this Court determined that such action was not an abuse of discretion. In so doing, this Court stated that to allow Rule 60(b) re-evaluations of civil rights settlements, which in Smith would have been two years after settlement, would violate both the finality and integrity of the settlement process