James William AUSTIN, et al., Plaintiffs,

v.

COUNTY OF DEKALB, DEPARTMENT OF PUBLIC SAFETY, et al., Defendants.

Civ. A. No. C83–0325A.

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 16, 1983.

A. Lee Parks, Jr., Meals & Parks, Atlanta, Ga., for plaintiffs.

George P. Dillard, Gail C. Flake, Decatur, Ga., for defendants.

ORDER

FORRESTER, District Judge.

This action, alleging reverse discrimination and brought by four white DeKalb

police officers, is before the court on several motions.[1] For the reasons set forth below, this action shall be dismissed.

On December 18, 1979, a civil action was filed in this court, styled *Association of Law Enforcement Officers vs. Hand, et al.*, Civil Action No. C79–2313A, wherein defendants were accused of a pattern and practice of intentional racial discrimination in the hiring, assigning, transferring, and promotion of black police officers. On September 11, 1980, the court approved a Consent Decree entered into between the parties.

The averments of the complaint in this action recite the following. Plaintiff Austin currently holds the rank of Master Police Officer. On at least three recent occasions, Austin has successfully completed all requirements for promotion to Sergeant, and was placed on the promotional list for sergeant at a level entitling him to promotion. In each case, Austin has been passed over in favor of a black police officer whose qualifications and ranking on the promotional list were inferior to Austin's. "Complaint—Class Action," ¶ 2. Plaintiff Smith on at least three separate occasions has qualified for and completed the necessary testing to entitle him to promotion to the rank of sergeant. Yet, in each case, black officers ranking below him on the promotional listing have been selected. *Id.* ¶ 3. Plaintiff Maple has successfully completed the Lieutenant's Promotional Exam for the 1982–83 register and placed number two on the promotional list. Plaintiff Maple, however, was denied promotion in favor of black officers whose qualifications, ranking, and test scores were inferior to his. *Id.*, ¶ 4. Plaintiff Hardeman, having been employed by the DeKalb Police Department for over ten years, has achieved the rank of Master Police Officer. He has since sat for the sergeant promotional exam and placed fifth on the promotional list. Since the list went into effect, there have been six sergeant promotions and plaintiff Hardeman was

passed over on each occasion. The sole reason for his failure to receive the promotion due him was the preference accorded to black officers, all of whom rated below Hardeman. *Id.,* ¶ 5.

The allegations contained in the Complaint—Class Action clearly bear a relationship to or impinge upon the Consent Decree entered into in 1980. *See, e.g., id.,* ¶¶ 17, 19, 22, 23. In this action, plaintiffs seek to bring this cause on behalf of themselves and all others similarly situated and seek certification as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and 23(b)(3). The putative class sought to be represented by the plaintiffs is all present and prospective white officers of the DeKalb County Police Department. *Id.,* ¶ 26. The gravamen of the complaint is that defendants' use of the quota system to determine hirings, assignments, and promotions has been and continues to be under color of state law and has denied the plaintiffs and all others similarly situated the equal protection of the laws guaranteed them under the Fourteenth Amendment of the United States Constitution. *Id.,* ¶ 30. As relief, plaintiffs seek, among other things, that the racial quotas established by the preferential promotions plan and hiring plan, as contained in the Consent Decree of September 11, 1980, be declared an unconstitutional infringement of due process and equal protection of the Fourteenth Amendment. *See id.* at 20.

A consent decree may properly include provisions requiring a defendant to take affirmative action rectifying the effects of past discrimination. *United States v. City of Miami,* 664 F.2d 435, 442 (5th Cir.1981) (en banc) (Former Fifth Circuit) (citing *Regents of the University of California v. Bakke,* 438 U.S. 265, 301–02 & n. 41, 98 S.Ct. 2733, 2753–54 & n. 41, 57 L.Ed.2d 750 (1978) (Powell, J., announcing the judgment of the Court)). Inasmuch as the sub-

---

1. The following motions are pending: (1) Defendants' motion to dismiss; (2) plaintiffs' motion to amend and supplement the complaint; (3) plaintiffs' motion for consolidation; (4) motion by Association of Law Enforcement Officers of DeKalb, Inc., for relief from Local Rule 91.2; (5) motion for certification of class action; and (6) defendants' motion to stay proceedings.

stance of plaintiffs' allegations implicates the consent decree of 1980, plaintiffs' complaint constitutes a collateral attack of the consent decree. *Thaggard v. City of Jackson,* 687 F.2d 66, 68 (5th Cir.1982). It is well settled that a consent decree is not subject to a collateral attack. *See* cases cited in *Dennison v. City of Los Angeles Department of Water and Power,* 658 F.2d 694, 695 (9th Cir.1981). As stated by the Sixth Circuit last year:

> [A] reasonable consent decree which embodies an affirmative action plan does not affect any legally protected interests of non-minorities. Therefore, reverse discrimination challenges to reasonable consent decrees are impermissible collateral attacks.

*Stotts v. Memphis Fire Department,* 679 F.2d 541, 558 (6th Cir.1982).

In this case, there are no allegations of bad faith in entering into the decree. Nor are there allegations of a lack of a bona fide attempt to conciliate a claim or an attempt to bestow unequal employment benefits under the guise of remedying discrimination. *See Stotts,* 679 F.2d at 558; *EEOC v. McCall Corp.,* 633 F.2d 1232 (6th Cir.1980). Moreover, the 1980 consent decree is reasonable. Therefore, it does not adversely affect any legally protected interest of a non-minority. *Stotts,* 679 F.2d at 558; *McCall Corp.,* 633 F.2d 1232. It is a means to correct the adverse effects which minorities shoulder as a result of employment practices which precipitated the decree. It is a temporary means to partially realign promotional expectations to reflect minority employment levels which would have occurred absent the alleged discrimination.

> This realignment vindicates a societal interest in remedying the effects of racial [discrimination] and more than justifies the displeasure some non-minorities may experience. . . . The dissatisfaction which non-minorities and minorities may experience is inherent in the compromise which the 1980 Decree represents. A

consent decree reached after negotiation and consultation is the preferred means of balancing the conflicting societal and individual interests inherent in any employment discrimination action.

*Stotts,* 679 F.2d at 560. Indeed, the matrix schedule which is attached to the Consent Decree as Exhibit "B" does not prevent the promotion of whites. Top whites are getting promoted on an every other one basis until the matrix figure is met; after the matrix figure is met, the top three whites are promoted.

This court "retains the power to modify or vacate the decree if it later appears to have been unwise." *United States v. City of Miami,* 614 F.2d 1322, 1333 (5th Cir.1980), *aff'd in part, and vacated and remanded in part,* 664 F.2d 435 (5th Cir. 1981) (en banc) (Former Fifth Circuit case) (footnote omitted). Plaintiffs' cause in this action, however, is not the proper means to attain a modification of the consent decree. *See Thaggard,* 687 F.2d at 68. To permit a collateral challenge of this decree "would clearly violate the policy under Title VII to promote settlement." *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir. 1968). It "would also result in continued uncertainty for all parties involved and render the concept of final judgments meaningless." *Thaggard,* 687 F.2d at 69.

In summary, the court concludes that plaintiffs' claims are impermissible collateral attacks upon the consent decree of September 10, 1980. Accordingly, this action must be dismissed.