**Charlie CORLEY and Levaughn Carter, Individually, etc., et al., Plaintiffs-Appellees,**

**v.**

**JACKSON POLICE DEPARTMENT, etc., et al., Defendants-Appellees,**

**R.D. Thaggard, et al., Applicants for Intervention-Appellants.**

**No. 78–3795.**

United States Court of Appeals, Fifth Circuit.

March 29, 1985.

Ronald N. Ashley, Jackson, Miss., for applicants for intervention-appellants.

John E. Stone, City Atty., George Phillips, U.S. Atty., Jackson, Miss., Frank R. Parker, Jeffery C. Martin, Washington, D.C., for appellees.

Before POLITZ, GARWOOD and DA-VIS, Circuit Judges.

POLITZ, Circuit Judge:

On this appeal we must determine whether the trial court abused its discretion in denying appellants' motion to intervene in a Title VII suit in which a consent decree

was entered on March 25, 1974. Finding appellants' action untimely, we affirm.

## Facts

The litigation at the core of this appeal began in January 1973 when Corley and Carter, former black police officers in Jackson, Mississippi, brought a class action suit alleging racial discrimination in the City's hiring and promotion of police officers. The suit received widespread publicity. Several months later the United States Justice Department undertook an investigation in which it concluded that the City of Jackson had engaged in unlawful employment discrimination. The Justice Department invited the City, the Corley/Carter plaintiffs and other private plaintiffs to enter into discussions looking to a negotiated settlement of the disputes. The discussions were fruitful and accords were reached. On March 21, 1974, the United States filed suit against the City. The following Monday, March 25, 1974, consent decrees were entered in the government's suit and in the Corley/Carter suit. The decree in the latter incorporated the former. The Corley/Carter judgment required the City to pursue several remedial procedures and goals aimed at overcoming the effects of prior racial discrimination. Paragraph 5 of the decree established a race-conscious promotion procedure:

> In making promotions to supervisory positions and to the ranks above patrolman in the Jackson Police Department, defendants shall establish separate promotion eligibility lists for white and black employees on the basis of objective, reviewable, and nondiscriminatory standards provided in this Decree and Appendix 1 [the U.S. decree]. * * * Subject to the availability of qualified black candidates, defendants shall make future promotions within the Jackson Police Department alternatively from each such list in a one-to-one ratio until the proportion of black persons in supervisory positions and in the ranks above patrolman is substantially equal to the proportion of blacks to whites in the working age population of the City of Jackson.

To ensure that the decree would be understood and followed within the police department, paragraph 10 of the decree called for its posting and dissemination:

> Defendants shall post or cause to be posted this Decree on regular informational bulletin boards in the Jackson Police Department for a period of 30 days immediately after entry of this Decree, and the defendants shall meet with all department, division, and bureau heads and inform them of the requirements of this Decree, and instruct them to instruct all employees under their supervision to familiarize themselves with the terms of this Decree.

The terms of the decree were widely published. No challenge resulted until July 13, 1976 when a large group of white officers, including four of the six appellants, brought suit in state court complaining about the establishment of two separate, race-conscious promotion lists. That suit, styled *Reed v. City of Jackson,* was removed to federal court but remanded. On November 16, 1976, the state court chancellor dismissed the *Reed* suit and an appeal was lodged with the Supreme Court of Mississippi.

While the *Reed* case was pending Ronald N. Ashley, counsel for appellants, himself a white applicant for employment with the police department, sought a mandamus from state court commanding the police officials to cease implementation of the procedures adopted pursuant to the two federal court consent decrees. On motion of the Corley/Carter plaintiffs, the court *à quo* enjoined the *Reed* plaintiffs and Ashley from pursuing state court actions seeking relief inconsistent with the Corley/Carter decree. The injunction included the *Reed* appeal. Ashley noticed an appeal from this injunction but did no more and his appeal was dismissed for want of prosecution. The *Reed* plaintiffs did not appeal the injunction.

On May 22, 1978, nearly two years after the *Reed* suit was filed and more than a year after that suit had been enjoined as an

impermissible collateral attack on the Corley/Carter decree, appellants moved to intervene in the Corley/Carter class action. Simultaneously, appellants filed a new civil action challenging the one-to-one promotion practice established in the Corley/Carter consent decree. The district court conducted a hearing on the motion to intervene and denied same. That same day the district court dismissed the independent suit as an inappropriate collateral attack on the consent decree. On appeal we affirmed, *Thaggard v. City of Jackson*, 687 F.2d 66 (5th Cir.1982), considering appellants' challenge "akin to a mortar attack on the validity of the decrees themselves." *Id.* at 69. To permit this collateral challenge "would clearly violate the policy under Title VII to promote settlement ... [and] ... result in continued uncertainty for all parties involved and render the concept of final judgments meaningless." *Id., quoting Prate v. Freedman*, 430 F.Supp. 1373 at 1375, *citing Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir.1968). We concluded that "to allow plaintiff to attack the decree at this late point would severely undercut important notions of judicial efficiency and finality of judgment, and would unfairly prejudice other parties and nonparties." *Id., quoting Hefner v. New Orleans Public Service, Inc.*, 605 F.2d 893, 898 (5th Cir. 1979).

Appellants explain their 50-month delay in challenging the consent decree by suggesting that they did not discover the impact of the Corley/Carter procedures until a hearing during the *Reed* case.[1]

### Analysis

The threshold consideration of any motion to intervene is timeliness. Fed. R.Civ.P. 24. The Supreme Court teaches that "[t]imeliness is to be determined from all the circumstances." *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). The issue of timeliness is addressed to the discretion of the trial court, reviewable only for an abuse of that discretion. *Id.* In *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir.1977), we distilled four factors to be weighed in determining whether a motion to intervene was timely:

Factor 1. The length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene....

Factor 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case....

Factor 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied....

Factor 4. The existence of unusual circumstances militating either for or against a determination that the application is timely ...

*Id.* at 264–66. As we observed in *Lelsz v. Kavanagh*, 710 F.2d 1040, 1043 (5th Cir. 1983), "*Stallworth* is not an algorithm, but a framework for analysis." We review the present factual situation within that analytical framework.

The first factor inquires of the time lapse between receipt of actual or imputed knowledge and the attempt to intervene. We must consider "movant's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case," *United States v. Marion County School District*, 590 F.2d 146, 149 (5th Cir.1979), or "knew that his interests were no longer adequately represented,"

---

1. Appellants would also explain a portion of their delay by contending that they had to complete Title VII administrative procedures before seeking judicial relief. We are not persuaded. Appellants could have presented without delay claims under 42 U.S.C. §§ 1981 and 1983 and the fourteenth amendment. Further, we have held that compliance with Title VII timetables does not insulate against a claim of laches. *Franks v. Bowman Transport Co.*, 495 F.2d 398 (5th Cir.1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). *See Fowler v. Blue Bell*, 596 F.2d 1276 (1979).

*Piambino v. Bailey,* 610 F.2d 1306, 1325 (5th Cir.), *cert. denied,* 449 U.S. 1011, 101 S.Ct. 568, 66 L.Ed.2d 469 (1980).

■ Appellants make the assertion but do not seriously contend that their interests were not represented in the Corley/Carter litigation, nor do they make any meaningful showing that they were unaware of the decree or of its terms until the *Reed* case. From the record before us and the entire history of the Jackson, Mississippi police discrimination litigation, it appears certain that appellants were or should have been aware of the Corley/Carter suit and its thrust from early 1973. In any event, they are presumed notified after the consent decree was reached and widely publicized, including its posting on the 11 police department bulletin boards and becoming the subject of intradepartmental lectures and discussions. Assuming the nigh impossible, that somehow appellants were oblivious of the decree and the litigation, from and after the *Reed* suit they perforce were fully aware of the dual promotion lists. In *Reed* they complained of that procedure. Two more years passed before the move to intervene. That delay was inordinately long. We found two years an undue delay in *Smith v. Missouri Pac. R. Co.,* 615 F.2d 683 (5th Cir.1980), and in *Hefner v. New Orleans Public Service, Inc.,* 605 F.2d 893 (5th Cir.1979). Seven and one-half months was considered too long a delay in *United States v. Allegheny-Ludlum Industries, Inc.,* 553 F.2d 451, 453 (5th Cir.1977) (in which we observed that permitting "[P]ost-judgment intervention is rare."). The delay in the case at bar is manifestly excessive. The reasons for the delay advanced by appellants are not persuasive.

The second factor relates to prejudice to the parties if appellants' intervention is allowed. The prejudice is apparent. A negotiated settlement of a difficult problem is put at risk, to the disadvantage of the named parties, the class, the police department and the City. There would have been prejudice had the intervention come immediately after the decree and before implementation of the new procedures. Coming after implementation markedly increases the prejudice. Officers have been promoted; their promotions and the entire promotion system would be jeopardized. The impact on police morale and on the operation of the police department, as well as costs to the City, pose serious considerations. The prejudice factor militates heavily against appellants.

The fourth factor likewise weighs heavily against appellants for they had control of the tactical decisions which occasioned or contributed to the inordinate delay.

In light of the foregoing, *Stallworth's* third factor, involving prejudice to the intervenor, could not bring sufficient weight to bear to offset the other factors and carry the timeliness issue for appellants. Viewing timeliness through the *Stallworth* prism, we are convinced that the trial court's rejection of appellants' motion to intervene was within the court's discretion. Whether we consider appellants' intervention to be of right or permissive, it was not timely.

We are constrained to note that if the foregoing well-settled intervention rules in combination with the rule of *Thaggard v. City of Jackson,* to which we are firmly bound here, unjustly deny a party his day in court, then the appropriate remedy lies in reexamination of the *Thaggard* doctrine in the appropriate forum, particularly in light of the persuasive opinion of Justice Rehnquist, joined in by Justice Brennan, dissenting from the denial of certiorari in *Thaggard,* — U.S. —, 104 S.Ct. 255, 256–59, 78 L.Ed.2d 241 (1983). *See also United States v. Jefferson County,* 720 F.2d 1511, 1518 & n. 18, 1519 & n. 20 (11th Cir.1983).

AFFIRMED.