Evelyn MARINO, et al.,
Plaintiffs-Appellants,

v.

Juan U. ORTIZ, et al.,
Defendants-Appellees.

No. 204, Docket 86-7347.

United States Court of Appeals,
Second Circuit.

Argued Oct. 16, 1986.

Decided Dec. 8, 1986.

Ronald Podolsky, New York City, for plaintiffs-appellants.

Elizabeth Dvorkin, New York City, Asst. Corp. Counsel (Frederick A.O. Schwarz, Jr., Corp. Counsel, Fay Leoussis, Asst. Corp. Counsel, of counsel), for defendants-appellees.

Before FEINBERG, Chief Judge, WINTER and MAHONEY, Circuit Judges.

FEINBERG, Chief Judge:

This case requires an inquiry into what constitutes a collateral attack on a consent decree. Evelyn Marino et al., appeal from a judgment of the United States District Court for the Southern District of New York, Robert L. Carter, J., dismissing their complaint as a collateral attack on the settlement in *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't,* 40 Empl.Prac.Dec. (CCH) ¶ 36,385 (S.D.N.Y.1986). This appeal was argued at the same time as the appeal from the order in *Hispanic Society,* which has also been decided this day. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't,* 806 F.2d 1147, (2d Cir.1986). Appellants contend that their suit cannot be a collateral attack because their complaint was filed before the final order in *Hispanic Society* was entered. Because we think the district court properly viewed this action as a collateral attack on a consent decree, we affirm.

## Facts

In the latter half of 1984, the Hispanic Society of the New York City Police Department Inc. and the Guardians Association of the Police Department of the City of New York, Inc., two groups that represent minority members of the New York City Police Department, brought Title VII suits against the Department and other City defendants, alleging that the sergeant's examination given earlier that year and the promotion Eligible List based on the examination were racially discriminatory. The lawsuits were later consolidated into a single action and will be so regarded in this opinion. Although 12.3% of those taking the examination were black and 8.7% of them were Hispanic, blacks and Hispanics accounted for only 2.31% and 4.23% respectively of those whose scores qualified them for the Eligible List.

Three distinct groups intervened in the lawsuit: the Sergeants Benevolent Association on behalf of those officers who had been provisionally appointed from the Eligible List, the Sergeants Eligibles Association on behalf of officers on the Eligible List who had not yet been promoted and various white ethnic societies and individuals for other officers not promoted. Following extensive discovery, city officials realized it would be difficult to prove that the sergeant's examination was job related and therefore, difficult to defend the examination's clear discriminatory impact. Accordingly, the two sides began serious settlement negotiations in hopes of reaching an accommodation that would alleviate the discriminatory impact of the examination with a minimum of disruption to the Police Department.

Eventually, all the parties to the lawsuit except the white ethnic societies reached a settlement. Under the agreement, all the officers on the original Eligible List were to be promoted. In addition, a sufficient number of black and Hispanic officers were to be promoted so that each ethnic group's representation in the new class of sergeants would approximate its representation in the entire group of those who took the examination. The accommodation was spurred by the growing need for sergeants on the police force. The parties believed that this arrangement would eliminate the examination's discriminatory impact while avoiding the morale and management problems that would have resulted had the entire examination been scrapped. The additional black and Hispanic officers were to be added to the Eligible List in rank order of their scores on the written portion of the examination, since it was conceded that the test did have some ranking value.

When the general terms of the settlement became clear, all the parties except the white ethnic groups stipulated that the Police Department could promote the officers left on the Eligible List and additional black and Hispanic officers in accordance with the proposed settlement. The district court approved this interim settlement by order dated November 27, 1985. In April 1986, the district court held a hearing on

whether the proposed formal stipulation of settlement was reasonable, fair and adequate ("the objector hearing"), and on June 16, 1986, issued an opinion approving the settlement ("the consent decree").

Appellants filed the complaint in this action on December 30, 1985, after the interim settlement order in *Hispanic Society,* but before the consent decree was entered. Purporting to represent the class of white police officers who were not placed on the Eligible List but who scored at least as high on the examination as the lowest scoring minority officer promoted under the interim order, appellants alleged that the proposed settlement deprived them of the equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Although appellants had no expectation of promotion since they had failed the examination, they demanded that they too be made sergeants. On April 29, 1986, Judge Carter, who was also presiding over the *Hispanic Society* litigation, dismissed the complaint.

### Discussion

■ It is well settled that collateral attacks on consent decrees entered in Title VII actions are not permitted, e.g. *Prate v. Freedman,* 430 F.Supp. 1373 (W.D.N.Y.), aff'd mem., 573 F.2d 1294 (2d Cir.1977), cert. denied, 436 U.S. 922, 98 S.Ct. 2274, 56 L.Ed.2d 765 (1978); *Dennison v. City of Los Angeles Dep't of Water and Power,* 658 F.2d 694 (9th Cir.1981). The salutary policies underlying this rule are familiar. Allowing the terms of a consent decree to be contested in separate lawsuits would raise the specter of inconsistent or contradictory proceedings, would promote continued uncertainty thus undermining the concept of a final judgment and would violate the policy of promoting settlement in Title VII actions. *Prate v. Freedman,* 430 F.Supp. at 1375; *Thaggard v. City of Jackson,* 687 F.2d 66, 68–69 (5th Cir.1982), cert. denied sub nom. *Ashley v. City of Jackson,* 464 U.S. 900, 104 S.Ct. 255, 78 L.Ed.2d 241 (1983); *Austin v. County of DeKalb, Dep't of Pub. Safety,* 572 F.Supp. 479, 481 (N.D.Ga.1983); *O'Burn v. Shapp,* 70 F.R.D. 549, 552–53 (E.D.Pa.), aff'd mem. sub nom. *Lutz v. Shapp,* 546 F.2d 417 (3d Cir.1976), cert. denied, 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977). These policies are squarely implicated in the action before us and require that we affirm the dismissal of appellants' complaint as an impermissible collateral attack.

Admittedly, Judge Carter had not given final approval to the consent decree in *Hispanic Society* at the time he dismissed this lawsuit. Yet, the *Hispanic Society* litigation had proceeded to a very significant stage. A basic settlement had been reached and an interim order that matched the terms of the ultimate consent decree had been filed. A hearing had been scheduled to determine whether the proposed settlement was reasonable, fair and adequate. Had appellants been allowed to maintain this lawsuit under these circumstances, the parties' incentive to pursue the *Hispanic Society* settlement would have been seriously eroded; the settlement would have had no utility if it failed to prevent further litigation of the matter. Furthermore, since even the later actual entry of the consent decree in *Hispanic Society* would not have decided the issue, the concept of final judgment would have been undermined. By the same token, this lawsuit would have re-litigated the propriety of the settlement, thus inviting conflicting results. That appellants' complaint was before the same judge who was presiding in *Hispanic Society* does not change the result. See *Black and White Children of the Pontiac School System v. School Dis't,* 464 F.2d 1030 (6th Cir.1972) (per curiam). There could be no certainty that the two proceedings would continue in parallel fashion. Thus, Judge Carter was correct in deeming this suit an impermissible collateral attack on a consent decree.

Appellants' proper course, as in most cases where collateral attacks have been dismissed, would have been to intervene in the lawsuit from which the consent decree issued. *Dennison v. City of Los Angeles,* 658 F.2d at 696; *Black and White Children of the Pontiac School System v.*

*School Dis't,* 464 F.2d 1030. Indeed, appellees suggested precisely this course to appellants. If intervention had been denied, the proper course would have been to appeal that denial, *Burns v. Board of School Comm'rs,* 437 F.2d 1143 (7th Cir.1971) (per curiam). Attempting intervention in *Hispanic Society* was obviously available to appellants when they commenced this action, since the final consent decree in that litigation had not yet issued.

Not only did appellants have notice of the proceedings in *Hispanic Society* and a suggestion to intervene therein, but they actually presented their claims at the objector hearing in that case. Judge Carter considered appellants' claims, and found them to be without merit. Thus, appellants had the opportunity to engage in the original lawsuit and actually presented their claims. As we have said in an analogous context, "[t]he efficient and fair administration of justice requires that litigation of an issue at some point come to an end. And for the appellant, who has had one opportunity already to contest the ... order, the time to relitigate that issue has necessarily run." Class v. Norton, 505 F.2d 123, 125 (2d Cir.1974).

Finally, the instant lawsuit is, of course, an attack on the substance of the consent decree. Appellants argue that rather than disturbing the consent decree, they are merely requesting the court to order their promotion. Even if this relief were within the court's power to grant, it would destroy the settlement by recreating the adverse racial impact that brought on the *Hispanic Society* litigation to begin with.

Accordingly, the judgment of the district court is affirmed.