William BARHOLD, Frederick Flood, Rita Flynn–VanEs, Ruby K. Russell, John Sullivan, and Rand Condell as President of the New York State Public Employees Federation, AFL–CIO, Plaintiffs–Appellants,

v.

Ramon J. RODRIGUEZ, Individually and as Chairman of the New York State Division of Parole; Edward Elwin, Individually and as Executive Director of the New York State Division of Parole; Martin F. Kelly, Individually and as Director of Administration of the New York State Division of Parole; Henry P. Bankhead, Individually and as Director of Personnel of the New York State Division of Parole; Omoye Cooper, Individually and as Affirmative Action Officer of the New York State Division of Parole; the Division of Parole; Mario Cuomo, Governor and Chief Executive Officer of the State of New York; and the State of New York, Defendants–Appellees.

No. 119, Docket 88–7361.

United States Court of Appeals, Second Circuit.

Argued Sept. 23, 1988.

Decided Dec. 8, 1988.

Nancy Burritt, Albany, N.Y. (Richard E. Casagrande, Albany, N.Y., of counsel), for plaintiffs-appellants.

Michael S. Buskus, Asst. Atty. Gen., State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of State of N.Y., O. Peter Sherwood, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., State of N.Y., Albany, N.Y., of counsel), for defendants-appellees.

Before MESKILL, PIERCE and WINTER, Circuit Judges.

MESKILL, Circuit Judge:

Plaintiffs appeal the decision of the United States District Court for the Northern District of New York, McAvoy, *J.*, denying their motion for summary judgment and granting defendants' motion for summary judgment. Appellees are the New York State Division of Parole, certain of its employees, New York Governor Mario Cuomo and the State of New York. Plaintiffs-appellants Flood, Flynn–VanEs and Sullivan are employees of the Division with at least ten years seniority service with the State of New York. They challenge an affirmative action plan (plan), designed and implemented by the Division, as violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

■■■ The district court held that Barhold, Russell and Condell lacked standing. Only Barhold and Russell challenge that ruling on appeal. Appellees in their brief say they "withdraw their defense of lack of standing," Br. of Appellees at 18 n. 8. This, of course, they cannot do. Standing is a jurisdictional matter; the defendants are mistaken in their notion that a defense of lack of standing can be "withdrawn." To the contrary, insofar as standing is an article III requirement for jurisdiction, the parties do not have the power to confer such jurisdiction upon the Court by conceding the standing of certain plaintiffs. *See In re Stable Mews Associates,* 778 F.2d 121, 124–25 (2d Cir.1985). In any event, we believe the district court was correct in its ruling that Barhold and Russell do not have standing. Both appellants have been reassigned under the plan; they have not been prevented from relocating and have sustained no cognizable injury. Plaintiffs' allegation that New York's policy of *"stare decisis"* serves to provide them with standing is insufficient to support article III jurisdiction. Their argument translates into one that equates the danger of collateral estoppel with injury. Plaintiffs fail to note that in the absence of initial injury— *i.e.,* a loss of reassignment opportunity— there is no reason to apply principles of *stare decisis* to either Barhold or Russell. As they already have received their requested reassignments, there is no danger that an adverse decision would affect them; similarly, relief would not be necessary should the district court's decision on remand be favorable to them.

In this opinion we refer to the plaintiffs as "Seniors" and the defendants as "Division."

The district court concluded that Division had shown a history of past discrimination through statistical evidence, therefore proving a compelling state interest. It also concluded that the plan was narrowly tailored to meet that compelling state interest. The court therefore concluded that the plan did not violate the Constitution and granted summary judgment to Division. We affirm that part of the district court's order denying summary judgment to Seniors, vacate that part granting summary judgment to Division, and remand for further proceedings.

## BACKGROUND

This appeal involves a challenge by certain New York State employees of varying backgrounds to an affirmative action plan promulgated by their employer, the Division. The plan was drawn up in response to what the Division perceived as an underrepresentation of women and minorities in parole officer positions outside the New York City area. J.App. at 252.

Parole officers in New York State are hired on a statewide basis; when hired, an officer cannot choose the office in which he or she wishes to work. *Id.* at 229. After being hired, however, officers are able to request a reassignment from one office in the state to another; in the past, priority for these reassignments was based, through longstanding practice, on seniority. *Id.* at 230. Nevertheless, the Division always reserved the right to use bases other than seniority to determine who would be reassigned, and had made occasional reassignments for reasons of hardship and personnel relations. *Id.* at 67, 77, 111, 427–28, 458–59.

When a position opened up at an office, the Division would first seek current employees who wished to transfer to fill the position. If there were no such requests, the Division would then look to laid-off employees. Finally, if there were no former or current employees interested, the Division would open the position to the Civil Service new hire list. *Id.* at 311; Br. of Appellants at 7. Most senior employees requested reassignment out of New York City, filling any vacancies that occurred upstate or on Long Island. As a result, most positions that were opened to new hires were in New York City, and recruitment efforts that increased numbers of women and minorities in the Division only did so there.

At the time the Division instituted the plan, the disparity between the composition of New York City parole officers and other parole officers in the state was evident. According to Division's statistics, even after increased recruitment efforts, women and minorities comprised less than twelve percent of the parole officers in upstate New York and Long Island, while they comprised more than forty percent of the officers in New York City. J.App. at 265. To correct this situation, the Division designed its affirmative action plan to make seniority a factor in all reassignments, but the sole factor in only one-quarter of them. The remaining three-quarters were to be made on the basis of seniority, race and gender. Three lists were created, consisting of the names of White females, Blacks, and Hispanics; a fourth was designated as "all employees." *Id.* at 52–53. Each region identified as unrepresentative, based on comparisons of actual employees to available workers in New York State with comparable job skills, was assigned a hiring goal by which to assess progress. *Id.* at 250–61.

The plan took effect in January 1986, with reassignments made on a rotating basis from the four lists. Although scheduled to end in a year, the plan was modified in May 1986 after preliminary results showed some realignment of workforce composition. *Id.* at 57–59. As modified, the plan called for all reassignments to be made on the basis of seniority, but reserved to the Division the right to make up to half of all reassignments on other bases, including affirmative action goals. *Id.* at 58. During the first year of the plan and its modifications, over seventy percent of all reassignments were of White males.

*Id.* at 272. The modified plan has been extended twice, so that it is now scheduled to end in January 1989. *Id.* at 215, 247.

Seniors brought this action in March 1986, challenging the plan as discriminatory on the basis of race, gender and national origin in violation of the Equal Protection Clause of the Fourteenth Amendment. The district court denied a request for a preliminary injunction, *id.* at 116, and the parties began discovery. On October 30, 1987, Seniors moved for summary judgment, and Division cross-moved for summary judgment on January 22, 1988. The district court, ruling from the bench, granted Division's motion without making detailed findings of fact. *Id.* at 23–24. Seniors claim that their motion should have been granted and ask that we reverse the district court's grant of Division's motion.

### DISCUSSION

In deciding a motion for summary judgment, the district court must determine if there is an absence of any genuine issue of material fact. Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). While the district court need not make findings of fact, *Liberty Lobby,* 477 U.S. at 250, 106 S.Ct. at 2511, it "must make a factual determination that the employer has a strong basis in evidence for its conclusion that remedial action was necessary." *Wygant v. Jackson Board of Education,* 476 U.S. 267, 277, 106 S.Ct. 1842, 1848, 90 L.Ed.2d 260 (1986) (plurality opinion). A history of past discrimination is sufficient to allow the government to take remedial action. *United States v. Paradise,* 480 U.S. 149, 167, 107 S.Ct. 1053, 1065, 94 L.Ed.2d 203 (1987) (plurality opinion) (citing *Wygant,* 476 U.S. at 274, 106 S.Ct. at 1847 (opinion of Powell, J. ); *id.* at 286, 106 S.Ct. at 1853 (O'Connor, J., concurring)).

On review, we cannot disturb factual findings of the district court unless they are clearly erroneous, *Amadeo v. Zant,* — U.S. —, —, 108 S.Ct. 1771, 1777, 100 L.Ed.2d 249 (1988), but we review questions of law *de novo, Pierce v. Underwood,*

— U.S. —, —, 108 S.Ct. 2541, 2546, 101 L.Ed.2d 490 (1988). A determination of past discrimination in an affirmative action context is a "conclusion of law based on subsidiary findings of fact." *Detroit Police Officers' Ass'n v. Young,* 608 F.2d 671, 686 (6th Cir.1979), *cert. denied,* 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981) (DPOA).

Here, the district court ruled from the bench without making detailed findings of fact. The sole basis for its decision appears to be the statistical evidence presented by Division. However, this evidence, standing alone, is insufficient to support a finding of past discrimination. Therefore, the grant of summary judgment was improper.

■ On a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion. *See Dister v. The Continental Group, Inc.,* 859 F.2d 1108, 1109, 1114 (2d Cir.1988); *Eastman Machine Co. v. United States,* 841 F.2d 469, 473 (2d Cir.1988). This is true even though the court was presented with cross-motions for summary judgment; each movant has the burden of presenting evidence to support its motion that would allow the district court, if appropriate, to direct a verdict in its favor. *Eastman Machine Co.,* 841 F.2d at 473–74. Division failed to satisfy its burden here.

### A. *Division's Motion*

■ In a concurring opinion in *Wygant,* 476 U.S. at 284, 106 S.Ct. at 1852, Justice O'Connor harmonized the approaches individual justices had taken in that case and in prior cases to the showing defendants must make in supporting an affirmative action plan under attack. She said that while a public employer does not have to make findings that it engaged in past discrimination to implement an affirmative action plan, *id.* at 290, 106 S.Ct. at 1855 (O'Connor, J., concurring); *see also Johnson v. Transportation Agency,* 480 U.S. 616, 630 n. 8, 107 S.Ct. 1442, 1451 n. 8, 94 L.Ed.2d 615 (1987), it must have a "firm basis for believing that remedial action is required." *Wygant,* 476 U.S. at 286, 106 S.Ct. at 1853.

Division's plan can be justified only if the discriminatory impact of the seniority-based reassignment policy was the result of past discrimination.

Although statistical evidence alone may be sufficient to support a finding of a past constitutional violation, *see id.* at 293, 106 S.Ct. at 1857; *DPOA,* 608 F.2d at 686, the statistics presented below are insufficient to provide a firm basis for believing that the Division engaged in past discriminatory practices. Division's statistics just do not show that connection. The bare statements in the record are inadequate to link the statistics to past discriminatory practices.

In its supporting affidavits, the Division alludes to past discriminatory hiring practices that may have contributed to the dominance of White males in the senior ranks of parole officers. These practices included the placing of Black officers in predominantly Black, high crime offices and the limiting of women officers' caseloads to women parolees. J.App. at 97–98, 103, 108, 302–03. Evidence regarding these practices is sketchy, however, and there is no indication of their duration or effect. Thus, while appellees have shown that there may have been a firm basis for their engaging in an affirmative action plan, they have not yet satisfactorily established this, and thus the grant of summary judgment to Division was inappropriate.

B. *Seniors' Motion for Summary Judgment*

■ The denial of Seniors' motion for summary judgment is not a final decision of the district court and thus, under normal circumstances, would not be appealable. *See Akerman v. Oryx Communications, Inc.,* 810 F.2d 336, 339 (2d Cir.1987). However, as we have jurisdiction to decide Seniors' appeal from the granting of Division's motion for summary judgment, we exercise our discretion to decide their claim of error in the denial of their summary judgment motion as well. We do this for reasons of judicial economy, realizing that the issues presented by both motions are inextricably bound. *See Intermedics Infusaid, Inc. v.*

*Regents of the University of Minnesota,* 804 F.2d 129, 134 & n. 8 (Fed.Cir.1986); *Placid Oil Co. v. Ashland Oil, Inc.,* 792 F.2d 1127, 1133–34 (Temp.Emer.Ct.App. 1986); *New York v. Nuclear Regulatory Commission,* 550 F.2d 745, 759–61 (2d Cir. 1977); *see, e.g., Town of Huntington v. Marsh,* 859 F.2d 1134, 1135 (2d Cir.1988) (reviewing district court's grant and denial of summary judgment). *But see Ardoin v. J. Ray McDermott & Co.,* 641 F.2d 277, 278 (5th Cir. Unit A Mar. 1981).

■ The district court was correct in denying Senior's motion for summary judgment. The evidence was not sufficiently developed to allow a conclusion that a compelling state interest did not exist. There are two possible compelling state interests in this case, a history of past discrimination and operational need.

The record shows that while Division has produced at least some evidence indicating past discrimination, Seniors have not countered with any showing that past discrimination was not a factor contributing to racial and gender imbalance. Clearly, the critical facts regarding the history of the Division's hiring practices and employment policies, and their effect on the composition of the Division's workforce, need further development before a determination as to past discrimination can be made. On this record, we are unable to conclude that the effects of past discrimination were not at work in the Division.

We realize that Division is on the horns of a dilemma in this case. If it satisfies the compelling state interest test by proving that it has a firm basis for believing that it has discriminated in the past, it may prove that it actually did discriminate. It might then be collaterally estopped from denying such a fact if an employee brings an action alleging that he or she has been discriminated against in the past. The alternative is not to advance sufficient rebuttal evidence of past discrimination to save an affirmative action plan under attack. Nevertheless, we do not believe that this precondition places an unfair burden on an employer who is about to implement an affirmative action plan that will disadvan-

tage some employees solely on the bases of race and gender.

■ The second possible compelling state interest, but not the one relied on by the district court, is an "operational need" of the Division for a balanced workforce. Other courts have found that police and correctional departments may have such a need to integrate their workforces. *See, e.g., Talbert v. City of Richmond,* 648 F.2d 925, 928–29 (4th Cir.1981), *cert. denied,* 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982); *DPOA,* 608 F.2d at 695–96; *Minnick v. California Department of Corrections,* 95 Cal.App.3d 506, 157 Cal.Rptr. 260, 269 (1979), *cert. granted,* 448 U.S. 910, 100 S.Ct. 3055, 65 L.Ed.2d 1139 (1980), *cert. dismissed,* 452 U.S. 105, 101 S.Ct. 2211, 68 L.Ed.2d 706 (1981). While Division advances this argument, Br. of Appellees at 2, 10, 24, it supported it in the district court with even less evidence than its claim of past discrimination, *see* J.App. at 61, 98–99, 126. The issue is further obfuscated by Seniors' response to this argument which addressed a different issue: Seniors respond that an employer's desire to provide "role models" does not justify affirmative action. While this is a correct statement of the law, *see Wygant,* 476 U.S. at 275–76, 106 S.Ct. at 1847–48, it does not meet the operational need argument. "Operational need" refers to a law enforcement body's need to carry out its mission effectively, with a workforce that appears unbiased, is able to communicate with the public and is respected by the community it serves. "Role models," in contrast, are people whose very existence conveys a feeling of possibility to others; they give hope that a previously restricted opportunity might now be available.

### C. *On Remand*

■ If after further proceedings on remand the district court determines that a compelling state interest exists, it need not redetermine if the plan is narrowly tailored to serve that interest, *see Paradise,* 480 U.S. at 171, 107 S.Ct. at 1067. Under the criteria set forth in *Paradise,* to determine if a plan is narrowly tailored, we must look to "the necessity for the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *Id.* Considering these factors, we believe the district court was correct in finding that the plan is narrowly tailored.

The Division has attempted to integrate its workforce through hiring and minority recruitment efforts, but this has not increased the numbers of women and minorities in offices outside New York City. The plan itself is designed as a temporary measure; in fact, the Division modified it after only four months because of its effectiveness. The plan as modified is flexible, with affirmative action being only one of several factors that may be taken into consideration in allowing reassignments. Furthermore, affirmative action can be considered in only half of all reassignments: fully one-half of the reassignments must be made on the basis of seniority.

The plan does not set quotas for each region, but only goals used as a "benchmark" for assessing progress, J.App. at 23 (ruling of district court). Because the Division draws its employees from a statewide pool, it was proper for it to use statewide statistics to assess its needs. *Cf. Scoggins v. Board of Education,* 853 F.2d 1472, 1479 (8th Cir.1988). Finally, the impact on third parties has not been excessive and the interests of White males have not been unnecessarily trammeled. The plan was implemented as twenty-nine new positions were created; hence, there was still a considerable number of reassignment possibilities for White males. In fact, under the first year of the plan and its modification, over seventy percent of the reassignments were of White males.

Considering these factors and the plan's lack of effect in job opportunities such as hiring, layoffs or promotions, the district court's conclusion that the plan is sufficiently narrowly tailored to meet the compelling state interest will not be upset.

## CONCLUSION

Because the record below is insufficient as a matter of law to support a finding of past discrimination, we vacate the judgment of the district court granting Division's motion for summary judgment and remand this case to the district court for further proceedings.