Frank PAGANUCCI, Mort Adler, Augustine Aloia, Louis C. Amen, Linda M. Anderson, Alfonso Andosca, Salvatore Ardizzone, Robert Arluck, Michael Armstrong, Joseph Averso, Desmond P. Bailey, S. Balestrieri, James W. Bard, Daniel Barker, Kevin Barry, Joseph Battaglia, Nicholas N. Battista, Anthony H. Benvenuto, Ken Bergman, Frank Bergstol, Thomas P. Blake, Francis Bostelman, Joseph O. Brousseau, Michael F. Bruno, Joseph Buffolino, Kevin R. Burton, John Butler, Ralph Caioleo, Peter Calabrese, Anthony Calandrillo, Donald Calderone, Lawrence R. Callahan, Kenneth G. Calvey, Michael Campbell, William Canary, Noreen Canavan, Michael Cardillo, Michael Carey, John Carney, Philip Carter, Robert

Chambers, Frank F. Chin, James Ciaccia, Robert Clancy, Robert E. Clark, Patricia Collins, Anthony Concialdi, Salvatore Constrastano, Theresa Coyle, Thomas R. Coyne, William T. Daily, Gary S. Davis, Robert J. De Martino, Robert E. Dean, Matthew Della Peruta, Michael J. Devita, Michael A. Digilio, Joseph Di Paolo, Steven J. Digiorgi, Richard Dillon, John J. Donnelly, David K. Dubarry, Thomas J. Dunne, Dennis Emporor, Daniel Engel, Patricia Espinosa, Aniello M. Falanga, Robert Fecher, Timothy H. Finn, Jr., Michael Fiscina, Alan I. Fischer, Todd Fisher, Gary J. Fitzgerald, Theresa H. Foiles, Robert V. Foley, Norman R. Ford, Frank Forte, Richard Frick, Karl Gabrielsen, Frank Gaetani, Raymond Gallagher, Frank Gallipani, Scott A. Gallo, Julia Garate, John Geary, Ronald George, Joseph P. Giocondo, Stephen Giuntini, William Goellner, Charles Goetz, George Gorman, Debra A. Grahame, Angelo Graniero, John V. Grimes, Susan A. Haas, William P. Hanley, Robert G. Harnischfeger, David W. Hansen, Gerard F. Harris, Geoffrey Hart, Edward F. Hayes, James G. Heaney, Roger F. Heckt, Ronald Higgins, William Higgins, Lillielyn Hirsch, Lee C. Hom, Catherine H. Hull, Dennis Hull, Leo Itzkowitz, Steven Janovici, Joseph Jasinski, Catherine A. Jay, Pamela A. Johnson, Robert J. Jordan, Timothy P. Kane, Francis J. Keating, Kevin Keenan, Timothy Kelly, Patrick J. Kenny, William J. Kinzler, Robert Kjarbo, Stephen H. Kleimann, Robert A. Kloos, Keven J. Kocik, John J. Lanigan, Charles J. Lappe, Paul D. Lawrence, James T. Lien, Thomas W. Lind, Michael S. Littman, John J. Lohse, Anthony Lombardo, George F. Losonci, Nicholas J. Luciano, William Lukas, James T. Lynch, John E. Magee, George Mallon, Ralph Marchitelli, John Massa, Christopher Matejov, Robert C. Mautschke, Edward J. May, Charles McBride, Dennis McCabe, Terrance McCabe, Thomas F. McCabe, Frank McDaniel, Dennis J. McDonald, Thomas P. McFazen, Frank J. McGuire, William McLaughlin, Philip McNerney, Edmond McTigue, Juan B. Mendez, Kenneth Meringold, William P. Molly, Thomas Montero, James Mood, John A. Moschella, Bruce Murphy, Michael Neary, Michael D. Nemoyten, John T. Nickles, Stephen Nicotra, Edward J. Novak, Edmond Nugent, Kevin T. O'Connor, Nancy L. O'Connor, Patrick F. O'Connor, James J. O'Donoghue, Timothy O'Keefe, Walter O'Keefe, John O'Malley, James O'Reilly, Allyson G. Opis, Steven D. Osofsky, Alan R. Ostoits, Mark N. Ounderkirk, William G. Owen, John A. Palladino, David J. Panetta, Samuel Panuccio, Thomas Pappas, Nicholas Paquarello, Michael Pasquale, Joseph G. Pastorino, Nicky Patariu, Anthony Pauline, Arthur Peasler, Joseph Pentangelo, Mark Petterson, Robert Peyer, Anthony Perkins, Antony Pezzulo, Raymond M. Pierce, Louis Pioli, Joseph Pollack, Larry Praino, Christos Privolos, Richard A. Raggo, Stephen Ralko, Joseph C. Rasenberger, Charles F. Regan, Eileen Regan, George Reynolds, Francisco Rios, Thomas G. Rodahan, Benjamin Romano, William Romano, James R. Rogetti, Thomas V. Rosa, John Russo, Michael J. Ryan, Thomas F. Ryan, Michael Ryder, Leonardo A. Salerno, Jerry Saltzman, Warren Sam, Marianne C. Samothrakis, Vincent L. Sanserverino, Frank A. Santaromita, Ronald G. Scalzo, Stanley Schiffman, Craig H. Schroeder, Michael Seidel, Frederick J. Serio, Robert J. Seubert, Richard Severi, William G. Slane, Joseph Smigiel, Ann R. Sowinski, Robert Spadaccini, John Spadaro, Gustavo Sparovich, Louis Telano, Dennis J. Terminello, William Tesler, Charles G. Thiemer, Robert Tobuck, Janet M. Todd–Decker, Christopher P. Torf, Michael Trimis, John Turjak, Robert J. Uhl, Peter R. Van Wygerden, Stephen J. Varga, Ralph J. Viscio, Walter Voss, John Votta II, Michael B. Wagner, Brian Walsh, Michael V. Wang, Stephen J. Wawryk, Gregory Welch, Robert Williamson, John Wynne, Robert J. Yackel, Gregory J. Zofrea, Howard Allen, Gary Berman,

Steven Cairok, Joseph Concannon, Michael Connolly, Maurice Devito, Arthur Flynn, Kevin Grassing, James C. Kelly, Thomas P. Kelly, Steven Kubick, Robert B. Langer, Henry Mahncke, John Marcone, John Mazzocchi, Patrick McGinnis, Sergio Miklus, Kenneth Nilsen, Henry Palayo, Anthony Reitano, Robert A. Sowinsi, Joseph Torragrosa, Richard Sevieri, Kevin Sweeny, Rubin Rivera, Alan May, Marc Wolf, William Saunier, Anthony P. Contento, Dominick Petrucelli, Frederick Termini, Kevin Ryan, Florence Ciaffone and Samuel Reiver, Plaintiffs,

v.

The CITY OF NEW YORK, Douglas White, Personnel Director of N.Y.C., the N.Y.C. Dept. of Personnel, Lee Brown, Police Commissioner of N.Y.C., and the Police Department of the City of New York, Defendants.

No. 90 Civ. 1598 (RJW).

United States District Court,
S.D. New York.

March 10, 1992.

Ronald Podolsky, New York City, for plaintiffs.

O. Peter Sherwood, Corp. Counsel of City of New York (Marcia Goffin, of counsel), New York City, for defendants City of New York, Douglas White, Personnel Director of New York City, New York City Dept. of Personnel, Lee Brown, Police Com'r of New York City, and Police Dept. of City of New York.

Puerto Rican Legal Defense & Educ. Fund, Inc. (Kenneth Kimerling, of counsel), New York City, for defendant Intervenor Hispanic Society of New York City Police Dept.

Goodstein & West (Robert David Goodstein, of counsel), New Rochelle, N.Y., for defendant Intervenor Guardians Ass'n of Police Dept. of City of New York.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs move, pursuant to Rule 56, Fed.R.Civ.P., for summary judgment. Defendants the City of New York; Douglas White, Personnel Director of New York City; New York City Department of Personnel; Lee Brown, Police Commissioner of New York City; and the Police Department of the City of New York ("Municipal Defendants") and intervening defendants Hispanic Society of the New York City Police Department ("Hispanic Society") and Guardians Association of the Police Department of the City of New York ("Guardians") (collectively, "Intervenors"), each cross-move for an order denying plaintiffs' motion and awarding summary judgment to defendants and for an order imposing sanctions on plaintiffs. For the reasons that follow, plaintiffs' motion for summary judgment is denied and the cross-motions of Municipal Defendants and Intervenors for summary judgment are granted. Municipal Defendants' application for sanctions is granted and Intervenors' applica-

tion for sanctions is granted in part and denied in part.

## BACKGROUND

The relevant facts are not in dispute. Plaintiffs are present and former New York City police officers, all of whom took Civil Service Examination number 2548 for promotion to the rank of sergeant ("the Sergeant's Examination"). They assert that Municipal Defendants violated plaintiffs' Fourteenth Amendment rights by promoting persons to sergeant who scored the same or lower than plaintiffs on the Sergeant's Examination while plaintiffs did not receive promotions. Municipal Defendants made the challenged promotions pursuant to a consent decree, settling litigation brought by black and Hispanic police officers, alleging that the Sergeant's Examination violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

The New York City Police Department administered the Sergeant's Examination during June 1983 and April 1984. It was taken by 11,899 candidates for promotion to the rank of sergeant. The Department used the results of the examination to compile a list of officers eligible for promotion. Since the Department needed approximately 1,000 new sergeants at that time, a cutoff point was established that would yield the appropriate number of candidates. Although 12.3% of those who took the Sergeant's Examination were black and 8.7% were Hispanic, blacks and Hispanics made up only 2.31% and 4.23%, respectively, of those whose names were placed on the eligible list.

In the latter half of 1984, the Hispanic Society and the Guardians each brought lawsuits in this Court against the Police Department and other City defendants, alleging that the Sergeant's Examination and the resulting eligible list violated Title VII because the examination had a disparate impact on Hispanic and black candidates and was not job related. The two actions were eventually consolidated before the Honorable Robert L. Carter, in *Hispan-*

ic Society of the New York City Police Dep't v. New York City Police Dep't, 84 Civ. 6628 (RLC). Groups representing officers on the eligible list were permitted to intervene as defendants, as were various individuals and white ethnic societies representing officers who were not promoted.

Following discovery, city officials initiated discussions with the *Hispanic Society* plaintiffs, which resulted in a proposed settlement, which was then presented to the district court for approval. The settlement called for promotion of all of the candidates on the original eligible list and the successive promotion of black and Hispanic candidates who had taken the Sergeant's Examination until the disparate effect of the examination was eliminated. The settlement was conditionally accepted by the district court on February 7, 1986. *See* Stipulation of Settlement and Order, dated February 7, 1986, entered in *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't*, 84 Civ. 6628 (RLC) ("Stipulation").

On April 17, 1986, following notice to the members of the class, a hearing was held regarding the terms of the final settlement. Two individual intervenors filed objections to the settlement. In addition, at the hearing, objections were made by officers who were not on the eligible list but who claimed to have received scores equal to or higher than the black and Hispanic officers to be promoted pursuant to the settlement. Although these officers were not parties to the lawsuit, their attorney (who is also representing plaintiffs in this case) was permitted to argue at the hearing that the proposed settlement violated their right to equal protection of the laws. Judge Carter filed an opinion approving the settlement on June 16, 1986. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't*, 42 Fair Empl.Prac.Cas. (BNA) 905, 40 Empl.Prac.Dec. (CCH) ¶ 36,-385, 1986 WL 7014 (S.D.N.Y.1986). Three hundred and fifty of the non-party objecting police officers appealed the decision.

On December 30, 1985, suit was filed by a number of police officers who were not placed on the eligible list but who scored at least as high as the lowest scoring minority officer promoted under the interim order.[1] In that case, *Marino v. Ortiz*, plaintiffs argued that the proposed settlement deprived them of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution. Present counsel for plaintiffs was also counsel for plaintiffs in *Marino*. The case was assigned to Judge Carter, who dismissed the complaint on April 24, 1986.

On December 8, 1986, the Court of Appeals for the Second Circuit issued decisions in *Hispanic Society* and *Marino*. The appeal in *Hispanic Society* was dismissed because appellants in that case were not parties to the litigation, and therefore, lacked standing to prosecute the appeal. *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't*, 806 F.2d 1147, 1154 (2d Cir.1986). The Court of Appeals noted that the *Hispanic Society* appellants' lack of standing stemmed from "their steadfast refusal to comply with the requirements of intervention set forth in Fed.R.Civ.P. 24," and formally intervene in the case. *Id.* at 1153–54. The dismissal of the complaint in *Marino* was affirmed on the ground that the suit constituted an impermissible collateral attack on a consent decree. *Marino v. Ortiz*, 806 F.2d 1144, 1147 (2d Cir.1986). The Court of Appeals in *Marino* pointed out that appellants not only had notice of the proceedings in *Hispanic Society*, but actually presented their claims at the fairness hearing held in that case. The Second Circuit's decision in *Marino* was affirmed by an equally divided Supreme Court, and its decision in *Hispanic Society* was upheld. *Marino v. Ortiz*, 484 U.S. 301, 304, 108 S.Ct. 586, 587, 98 L.Ed.2d 629 (per curiam), *reh'g denied*, 484 U.S. 1082, 108 S.Ct. 1064, 98 L.Ed.2d 1026 (1988).

The following term the Supreme Court, in *Martin v. Wilks*, 490 U.S. 755, 769, 109 S.Ct. 2180, 2188, 104 L.Ed.2d 835 (1989), held that a non-party's challenge to actions taken pursuant to a consent decree does not constitute an impermissible "collateral

---

1. A number of the plaintiffs in that case are now plaintiffs in the instant action.

attack" on the decree. The *Marino* plaintiffs then moved in the Second Circuit for an enlargement of time in which to file a petition for rehearing. The Second Circuit denied the request, stating, "[t]he motion for enlargement of time is nothing but an attempt to reopen a final judgment because of a subsequent change in the law." *Marino v. Ortiz*, 888 F.2d 12, 13 (2d Cir.1989), *cert. denied*, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990). The Court noted that plaintiffs in that case had made no showing of a manifest or intolerable injustice:

> Indeed, they were fully aware of the proceedings leading up to the consent decree in question, and, viewing the proceedings as a whole, it is evident that this collateral attack was necessitated in part by their counsel's mistaken belief that they were parties to the class action.

*Id.*

In addition to the federal lawsuits described above, several proceedings were brought in New York state court challenging the scoring of the Sergeant's Examination under state laws governing civil service examinations. A number of these proceedings were consolidated, and subsequently the state court held that alternative answers were to be considered correct with respect to several questions on the examination. *Allen v. Ortiz*, 137 A.D.2d 424, 524 N.Y.S.2d 442 (1988). As a result of the ruling in *Allen*, the Sergeant's Examination was rescored and a new eligible list compiled. Black police officers made up 3.94% of the revised eligible list, while Hispanic officers comprised 5.56% of the revised list. *See* Affidavit of Francis Smith, filed July 22, 1991 at ¶ 4. Promotions were made pursuant to this list in or around May 1988. Additional black and Hispanic police officers were then promoted in order to maintain the proportion of minority police officers promoted pursuant to the *Hispanic Society* settlement.[2]

Plaintiffs commenced the instant action on March 9, 1990, claiming that they were denied equal protection of the laws because they were not promoted to sergeant when their scores on the Sergeant's Examination were at least equal to some of the black and Hispanic police officers who were promoted. Plaintiffs argue that the *Hispanic Society* consent decree does not constitute a valid defense to the denial of their right to equal protection, because plaintiffs were not parties to that consent decree. Defendants contend that the challenged promotions were made pursuant to a valid consent decree, and that the *Wilks* decision did not overrule pertinent Supreme Court precedent permitting race-conscious remedies under certain circumstances. In addition, defendants argue that many of the plaintiffs are barred from proceeding in this case due to their participation in the *Marino* litigation.

## DISCUSSION

The standards for granting summary judgment in this Circuit are well-established. A court may grant this extraordinary remedy only when it is clear both that no genuine issue of material fact remains to be resolved at trial and that the movant is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. In deciding the motion, the Court is not to resolve disputed issues of fact, but rather, while resolving ambiguities and drawing reasonable inferences against the moving party, to assess whether material factual issues remain for the trier of fact. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986) *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986)). Only where the entire record would inevitably lead a rational trier of fact to find for the moving party is summary judgment warranted. *National Railroad Passenger*

---

**2.** The *Hispanic Society* decree requires that any promotions made pursuant to an eligible list derived from the Sergeant's Examination include sufficient numbers of black and Hispanic officers to insure that the total promotions made with respect to the Sergeant's Examination will reflect the proportion of black and Hispanic test-takers. Stipulation at ¶¶ III.B, III.C.

474

Corp. v. City of New York, 882 F.2d 710 (2d Cir.1989).

While the party seeking summary judgment bears the burden of demonstrating the lack of material factual issues in dispute, *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir.1983), "the mere existence of factual issues—where those issues are not material claims before the court—will not suffice to defeat a motion for summary judgment." *Quarles v. General Motors Corp.* 758 F.2d 839, 840 (2d Cir.1985) (per curiam).

Although the movant faces a difficult burden to succeed, motions for summary judgment, properly employed, permit a court to terminate frivolous claims and defenses, and to concentrate its resources on meritorious litigation. *Knight v. U.S. Fire Ins. Co., supra*, 804 F.2d at 12. The motion then:

> is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." Fed.Rule Civ.Pro. 1 ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

As noted above, the parties in the instant case have each moved for summary judgment. Cross-motions for summary judgment, however, do not warrant the granting of summary judgment unless the Court finds that "one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed." *Frouge Corp. v. Chase Manhattan Bank*, 426 F.Supp. 794, 796 (S.D.N.Y. 1976). *See also Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 716 (2d Cir.1985); *Home Ins. Co. v. Aetna*

*Casualty and Surety Co.*, 528 F.2d 1388, 1390 (2d Cir.1976).

I. *Standing*

■ Plaintiffs argue that they have been damaged due to Municipal Defendants' failure to adhere to the order of scores generated by the Sergeant's Examination in making promotion decisions. Although none of the parties appears to have raised the question of plaintiffs' standing to contest the effects of the *Hispanic Society* consent decree, federal courts have an independent obligation to examine their own jurisdiction and "standing is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 607, 107 L.Ed.2d 603 (1990) (quoting *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). The Court will therefore address the question of standing.

None of plaintiffs in this action scored high enough on the Sergeant's Examination to be placed on the original list of those eligible for promotion, which numbered approximately 1,000. In order to comport with the *Hispanic Society* consent order, Municipal Defendants ultimately promoted more officers who took the Sergeant's Examination than those who were originally placed on the eligible list. This process was repeated after the *Allen* litigation resulted in a revised eligible list. Plaintiffs claim that the fact that their scores were at least equal to the scores of the officers who were promoted demonstrates that they suffered an injury at the hands of Municipal Defendants. However, plaintiffs had no legitimate expectation of obtaining promotions based on their scores alone.

■ Plaintiffs' only basis for claiming an expectation of promotion is that Municipal Defendants in fact promoted some officers whose scores fell below the eligibility cutoff for promotion. The only plaintiffs who may therefore legitimately claim to have been harmed are those who would actually have been promoted had Municipal Defendants strictly followed the order of scores

on the Sergeant's Examination in determining which officers whose scores fell below the cutoff would be promoted.[3] The remaining plaintiffs are without standing to proceed in this case, and their claims are accordingly dismissed.

## II. Res Judicata

■ Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Saud v. Bank of New York*, 929 F.2d 916, 918 (2d Cir.1991) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981)). It is undisputed that over fifty of the plaintiffs in this lawsuit were also parties in the *Marino* litigation.

Although the substantive law has changed since *Marino* was decided, the issues that were litigated in that case are identical to the issues raised here. The complaint in *Marino* states the same claim as the complaint in the instant case. Indeed, large portions of the two complaints are virtually identical. The existence of a final judgment in the prior case has also clearly been demonstrated. Judge Carter dismissed the complaint in *Marino* on the ground that it was an impermissible collateral attack on a consent decree, and the dismissal was subsequently affirmed by the Second Circuit and the Supreme Court.

The subsequent Supreme Court decision in *Wilks*, holding that a collateral attack on a consent decree is permissible, does nothing to change the preclusive effect of the decision in *Marino*. It is well settled that the *res judicata* consequences of a final judgment are not affected by the fact that the judgment may have rested on a legal principle that was subsequently overruled in another case. *Federated Dep't Stores, Inc. v. Moitie, supra,* 452 U.S. at 398, 101 S.Ct. at 2427.

Accordingly, those plaintiffs who previously asserted claims in *Marino*, challenging the *Hispanic Society* consent decree are barred by the principle of *res judicata* from proceeding here and their claims must be dismissed.

## III. The Effect of the Ruling in Martin v. Wilks

■ Prior to the Supreme Court's decision in *Martin v. Wilks*, the rule in this Circuit, as in most others, was that collateral attacks on consent decrees entered in Title VII actions were not permitted. *Marino v. Ortiz, supra,* 806 F.2d at 1146. *See also Martin v. Wilks, supra,* 490 U.S. at 762–63 n. 3, 109 S.Ct. at 2185 n. 3 (listing cases). The Supreme Court in *Wilks* rejected the "impermissible collateral attack" rule, and upheld a decision by the Eleventh Circuit allowing a group of white fire-fighters to litigate the merits of their claim that race-conscious promotion decisions made in reliance on consent decrees violated the Constitution and Title VII.

Although plaintiffs' reading of *Wilks* is somewhat difficult to discern, they apparently regard that decision as requiring this Court to ignore the consent decree entered in *Hispanic Society* in deciding their claims in the instant lawsuit. Plaintiffs reason that because they were never parties to the *Hispanic Society* litigation, not only are they not bound by the consent decree, but in addition, the consent decree may not be used in any way affecting them. Thus, plaintiffs argue that they are entitled to summary judgment, since defendants have admitted to making promotion

---

**3.** According to plaintiffs, police officers who were promoted to sergeant as a result of the *Hispanic Society* litigation received backpay and retroactive seniority, while those who were promoted as a result of the *Allen* litigation did not. Plaintiffs argue that all officers who were promoted as a result of the *Allen* litigation have standing to pursue a claim for backpay and retroactive seniority equivalent to that received by the officers promoted pursuant to the *Hispanic Society* settlement. This claim does not appear in the complaint or in plaintiff's motion papers, but was raised for the first time in a letter to the Court following oral argument. Letter, dated June 26, 1991 from Ronald Podolsky. Therefore, this claim is not properly before the Court. The only officers promoted as a result of *Allen* who have standing to proceed here are those who would have been promoted earlier had Municipal Defendants made promotions according to rank order of scores on the Sergeant's Examination.

decisions which deviate from the order of scores generated by the Sergeant's Examination and, according to plaintiffs, the Court may not consider the existence of the consent decree in determining whether or not plaintiffs' right to equal protection of the laws has been violated by such decisions.

Plaintiffs misconstrue the decision in *Wilks*. The Supreme Court held in *Wilks* that "[a] judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings." 490 U.S. at 762, 109 S.Ct. at 2184. The result of the ruling in *Wilks* is that a non-party to a consent decree has the right to a decision on the merits of his claim challenging the validity of decisions made pursuant to that consent decree, *see United States v. Internat'l Brotherhood of Teamsters*, 931 F.2d 177, 185 (2d Cir.1991), not that consent decrees should be viewed as a nullity as regards all nonparties.

In addition, although plaintiffs have repeatedly stated that they do not intend to bring a reverse discrimination claim here, it is worth noting that the *Wilks* decision does not alter the substantive law to be applied in cases involving equal protection challenges to race-conscious remedial measures. The Eleventh Circuit decision affirmed by the Supreme Court in *Wilks* directed the district court to decide the merits of the plaintiffs' claims, applying precedent governing reverse discrimination claims. *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492, 1500–01 (11th Cir.1987). Nothing in *Wilks* suggests that claims involving a collateral attack on a consent decree should be exempted from the Supreme Court teachings on race-conscious remedies. A recent Eighth Circuit decision in a case similar to the one at bar reached the same conclusion regarding the effect of the *Wilks* decision:

> While *Wilks* permits a nonparty to challenge the validity of employment decisions made pursuant to a consent decree, it does not speak to whether a particular race-conscious employment decision tak-

en pursuant to a consent decree will meet constitutional standards.

*Donaghy v. City of Omaha*, 933 F.2d 1448, 1457 (8th Cir.1991).

In order to prevail in this litigation, plaintiffs must do more than demonstrate that they are entitled to proceed on the merits of their claim. They must also show that they were not promoted as a result of a settlement agreement which fails to meet constitutional standards.

## IV. *Equal Protection Standards Applicable to the Consent Decree*

■ Plaintiffs insist that theirs is not a claim of reverse discrimination. According to plaintiffs, their equal protection rights have been violated not because of Municipal Defendants' use of racial criteria in making promotions to police sergeant, but solely because of the failure to make those promotions based on the scores derived from the Sergeant's Examination.

It is well established that when a state employs a classification which involves neither a suspect criterion nor a fundamental right, "that classification violates the equal protection clause only if it has no 'reasonable' or 'rational' basis." *Castellano v. Board of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 755 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 378, 116 L.Ed.2d 329 (1991). Here, according to the argument advanced by plaintiffs, Municipal Defendants effectively created two classes of individuals when they settled the *Hispanic Society* litigation: officers who were promoted under the terms of the settlement and those who have equal or better scores and were not promoted.

■ In order to overcome an equal protection challenge to which the "rational basis" standard of review applies, defendants need only demonstrate that the *Hispanic Society* settlement was rationally related to a legitimate state interest. *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 461–63, 101 S.Ct. 715, 722–23, 66 L.Ed.2d 659 (1981). Municipal Defendants' decision to settle the *Hispanic Society* litigation at the close of discovery was based

on their informed assessment of the likelihood that plaintiffs would ultimately prevail, as well as a balancing of the costs of continued litigation against the benefits of immediate settlement. Absent allegations of fraud or collusion between the parties, a decision to settle a lawsuit is clearly a legitimate state purpose. The promotions that resulted from the *Hispanic Society* settlement were reasonably related to that purpose, and therefore satisfy the rational basis test. Moreover, the *Hispanic Society* settlement meets the much higher strict scrutiny standard which plaintiffs have, for unknown reasons, declined to invoke.

The legal standards applicable to a consent decree which embodies a race-based remedy and to which a public employer is a party are analogous to those used in determining the validity of a public employer's affirmative action plan. A voluntary, race-conscious affirmative action plan does not violate constitutional standards if it is narrowly tailored to serve a compelling state interest. *Wygant v. Jackson Board of Education,* 476 U.S. 267, 274, 106 S.Ct. 1842, 1847, 90 L.Ed.2d 260 (1986) (plurality); *Barhold v. Rodriguez,* 863 F.2d 233, 237–38 (2d Cir.1988). A public employer is justified in undertaking an affirmative action program if it does so to remedy a history of past discrimination. *United States v. Paradise,* 480 U.S. 149, 167, 107 S.Ct. 1053, 1064, 94 L.Ed.2d 203 (1987) (plurality opinion).

An employer need not make findings it has engaged in illegal discrimination before it may adopt an affirmative action plan, but it must have a "firm basis for believing that remedial action is required." *Barhold v. Rodriguez, supra,* 863 F.2d at 236 (quoting *Wygant v. Jackson Board of Education, supra,* 476 U.S. at 286, 106 S.Ct. at 1853). In order to uphold the constitutionality of a voluntary affirmative action program, a court must make a factual determination that the employer has a "strong basis in evidence for its conclusion that remedial action was necessary." *Id.*

Here, the remedial action at issue was taken pursuant to a consent decree which was subjected to review and approval by the district court before it was permitted to take effect. Although the settlement agreement contains a disclaimer of liability on the part of the city, it also states that the Sergeant's Examination adversely affected black and Hispanic candidates for promotion and that the city had concluded that there "would be a substantial risk" that it would not be able to prevail in defending the examination as job related. Stipulation at 6. In addition, Judge Carter's opinion approving the settlement notes that "a cursory look at the statistics ... shows a prima facie adverse discriminatory impact on [blacks and Hispanics] ... and serves as a sufficient predicate for settlement based on race-conscious remedies." *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't, supra,* 42 Fair Empl.Prac.Cas. (BNA) at 908.

The statements contained in the *Hispanic Society* stipulation, as well as the contemporaneous findings of the district court at the time the settlement agreement was approved amply serve to justify the use of a race-conscious remedy to settle the *Hispanic Society* litigation. It is well settled that a statistical disparity sufficient to support a prima facie claim under Title VII provides a firm basis for the implementation of a race-conscious remedy. *Wygant v. Jackson Board of Education, supra,* 476 U.S. at 292, 106 S.Ct. at 1856 (O'Connor, J., concurring); *Johnson v. Transportation Agency,* 480 U.S. 616, 632, 107 S.Ct. 1442, 1452, 94 L.Ed.2d 615 (1987); *Id.* at 649, 107 S.Ct. at 1461 (O'Connor, J., concurring in judgment).

Plaintiffs contend that the changes in the eligibility list resulting from the *Allen* litigation undermine the basis for the district court's approval of the settlement agreement in *Hispanic Society.* Even assuming, however, that in deciding plaintiffs' claims here, the Court is required to consider factual developments which occurred after the *Hispanic Society* settlement was approved, it is clear that the adverse impact of the Sergeant's Examination on minority candidates for promotion was not

eliminated when the revised eligibility list was compiled. The Court therefore concludes that the inclusion of a race-conscious remedy in the *Hispanic Society* settlement was justified by a compelling state interest.

Once a court concludes that a race-conscious remedy is justified, it next must examine the manner in which such a remedy is implemented, to ensure that it is sufficiently narrowly tailored. To determine if an affirmative action plan is narrowly tailored, a court must consider

> the necessity of the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties.

*Barhold v. Rodriguez, supra,* 863 F.2d at 238 (quoting *United States v. Paradise, supra,* 480 U.S. at 171, 107 S.Ct. at 1066.)

Here, the *Hispanic Society* settlement relates exclusively to the eligibility list derived from the Sergeant's Examination, which is only in force for a limited period of time. As noted by Judge Carter, "[t]he settlement protects the interests of those who passed the test and were placed on the eligible list while at the same time alleviating the disparate impact the test inflicted on minority members," *Hispanic Society of the New York City Police Dep't v. New York City Police Dep't, supra,* 42 Fair Empl.Prac.Cas. (BNA) at 908, since it provides that all those officers who received passing grades on the Sergeant's Examination would receive promotions. The only beneficiaries of the settlement are the minority officers who were affected by the examination's disparate impact, and thus the settlement is not overinclusive. *See Richmond v. J.A. Croson Co.,* 488 U.S.

469, 506–08, 109 S.Ct. 706, 727–28, 102 L.Ed.2d 854 (1989). The Court therefore concludes that the *Hispanic Society* settlement is sufficiently narrowly tailored to meet its remedial purpose.

Having determined that the challenged promotions took place pursuant to a consent decree which meets constitutional standards—either those put forward by plaintiffs or the more rigorous standards applicable to consent decrees employing racial criteria—the Court concludes that those promotions were fully justified and that Municipal Defendants and Intervenors are accordingly entitled to summary judgment.

## V. Sanctions

Municipal Defendants and Intervenors argue that plaintiffs' counsel acted frivolously in naming over 50 persons as plaintiffs in this lawsuit who are clearly barred from proceeding here by virtue of their participation in the *Marino* litigation. Defendants argue that they should not be required to bear the costs of defending these frivolous claims. In addition, Intervenors seek sanctions with respect to all of plaintiffs' substantive claims. In response, plaintiffs contend that *Marino* was dismissed on procedural grounds, and that therefore the plaintiffs in that case are not barred from relitigating the substantive claims raised there. Plaintiffs also urge the Court to declare Rule 11 of the Federal Rules of Civil Procedure unconstitutional as applied when it is used to award sanctions against attorneys who sue governmental agencies.

While the imposition of sanctions under Rule 11 is mandatory when a claim has absolutely no chance of success,[4] the

---

**4.** Rule 11 provides, in pertinent part, that:
The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as

to harass or to cause unnecessary delay or needless increase in the cost in the litigation ... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the fil-

Court is to avoid hindsight review of the claim, to resolve all doubts in favor of the signer and to refrain from imposing sanctions where such action would stifle the enthusiasm or chill the creativity that is the very lifeblood of the law. *Motown Productions, Inc. v. Cacomm, Inc.,* 849 F.2d 781, 785 (2d Cir.1988); *Oliveri v. Thompson,* 803 F.2d 1265, 1275 (2d Cir.1986), *cert. denied,* 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985).

■ There need be no showing of bad faith on the part of the signer of the submission at issue for the imposition of sanctions. *Cross & Cross Properties, Ltd. v. Everett Allied Co.,* 886 F.2d 497, 504 (2d Cir.1989). Instead, sanctions are appropriate where an attorney's signed submission fails to meet a test of objective reasonableness. *McMahon v. Shearson/American Express, Inc.,* 896 F.2d 17, 22 (2d Cir.1990); *Cross & Cross Properties, Ltd. v. Everett Allied Co., supra,* 886 F.2d at 504.

> Although other goals for the imposition of sanctions under Rule 11 may exist, for example, punishment for violation of the Rule, compensation for victim [sic] of the violation, and deterrence of others, focus should be on the drafters' aim of discouraging dilatory and abusive litigation tactics and eliminating frivolous claims and defenses, thereby speeding up and reducing the costs of the litigation process. Sanctions are the deterrent threat [citation omitted], by which a district court judge may deal with counsel who ignore their broadened responsibility under the amended Rule to forward the effective administration of justice.

*McMahon v. Shearson/American Express, Inc., supra,* 896 F.2d at 21.

■ With respect to the inclusion in this lawsuit of plaintiffs whose claims are barred by the doctrine of *res judicata,* sanctions are warranted. There is no merit to either argument advanced by plaintiffs in opposition to an award of sanctions. Although the court in *Marino* did not reach all of the arguments advanced by plaintiffs

there, the dismissal in that case was a dismissal on the merits. Moreover, plaintiffs' counsel was fully aware that a final judgment entered in *Marino,* since he served as counsel for plaintiffs in that case. Indeed, the Second Circuit pointed out that the *Marino* plaintiffs' were "attempting to reopen a final judgment" when it ruled on their application for an extension of time in which to file a petition for rehearing. *Marino v. Ortiz, supra,* 888 F.2d at 14. In addition, while it is true, as plaintiffs argue, that they have a constitutional right to petition their government for redress of grievances, this right does not shield them from sanctions for bringing "unreasonable and groundless" claims against government entities. *Eastway Construction Corp. v. City of New York, supra,* 762 F.2d at 252.

■ As to Intervenor's application for sanctions with respect to the substantive claims contained in the complaint, the Court notes that plaintiffs' main claim here is based on their interpretation of a recent Supreme Court decision. While their argument was not ultimately successful, it would be inappropriate for this Court to rule that they acted frivolously in advancing it. Accordingly, sanctions, in the form of attorneys' fees and costs, are awarded to Municipal Defendants and Intervenors only with respect to the issue of *res judicata.*

### CONCLUSION

The claims of those plaintiffs who are without standing to challenge the *Hispanic Society* consent decree are dismissed. Plaintiffs' motion for summary judgment is denied and the cross-motions of Municipal Defendants and Intervenors for summary judgment are granted, both as to those plaintiffs who are barred from proceeding by virtue of their participation in the *Marino* action, and as to the balance of the cross-motions, relating to the merits of plaintiffs' claim. Municipal Defendants' and Intervenors' applications for sanctions are granted with respect to the issue of *res*

ing of the of the pleading, motion, or other

paper, including a reasonable attorney's fee.

*judicata* and Intervenors' application for sanctions is otherwise denied. The Court directs that Municipal Defendants and Intervenors submit affidavits by April 10, 1992 detailing their expenses, including their attorneys' fees, for work performed on the *res judicata* issue.

Settle judgment on notice.